THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee *v.* SAM THOMAS, Defendant-Appellant.

(No. 71-90;

Third District—February 29, 1972.

James Geis, of Illinois Defender Project, of Ottawa, for appellant.

John David Swanzig, Assistant State's Attorney, of Ottawa, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant appeals from a judgment of guilty of possession of explosives following a jury trial. He was sentenced to a term of not less than 3 nor more than 10 years in the penitentiary as a result thereof.

On appeal in this Court, defendant contends that he was not proven guilty beyond a reasonable doubt of the offense of possession of explosives in that it was never sufficiently established that defendant knew that another man intended to use the explosives to commit a felony. Defendant also contends that the remarks of the prosecutor in closing

argument were prejudicial and of such nature as to deny defendant of a fair trial, and, additionally, that a jury instruction defining the offense of possession of explosives was so vague and ambiguous that it served to mislead the jury.

Four witnesses were called by the State. Robert Walker testified that on August 22, 1968, while he was serving as undercover agent for the Illinois Crime Commission, he met with the defendant at Marseilles, Illinois. This meeting had been arranged by an informer associated with Walker, one Frank Grudzinski, also known as Murphy. The purpose of the meeting was to complete a transfer of explosives from defendant Thomas to Robert Walker. In the course of the conversations between Walker and defendant, Walker testified that defendant Thomas asked him if he had any use for dynamite and blasting caps and Walker stated that he did. At the trial, Walker was interrogated as to whether Thomas was told what Walker wanted the dynamite and blasting caps for. Walker answered, "Yes. I said I was going to blow up a restaurant in Chicago." Thereafter, Walker stated that he asked defendant Thomas how powerful the dynamite was, and the defendant Thomas said that it was 70% nitro, two and a half inches in diameter, and 18 inches long. Walker stated that Thomas then said that "if you would tape one of the sticks of the dynamite to the wall of the tavern" they were in, "it would blow off the front of the place."

After this conversation, the three men traveled to a house in Marseilles from which defendant obtained a quantity of explosives and transferred them to the automobile of Walker. The other three prosecuting witnesses included a Mr. Ewert, an agent of Walker's who observed the meeting as between the parties and verified that it took place; and Frank Kasky and Robert Boese who were called to establish the fact that the materials transferred to Walker by defendant were actually explosive compounds. Frank Grudzinski (also known as Murphy) did not testify.

Defendant testified in his own behalf and stated that Grudzinski had indicated that the man wanted the explosives to remove some fish from a lake in northern Illinois. Defendant stated that acting on this belief he obtained the explosives from a friend. He also denied that he had any information that the explosives might be used for destroying a restaurant in Chicago.

■■ As we have indicated, Walker told defendant that he was going to use the explosives to blow up a restaurant. He also asked defendant how powerful the dynamite was and was told that if it was taped to the wall of the tavern they were in it would blow off the front of the place. There was, therefore, sufficient evidence which if believed by a jury would indicate that defendant Thomas knew the purpose to which the

dynamite and blasting caps were to be put. The record also showed that the type of dynamite involved would regularly be used in the course of the business of a commercial blaster. Since it is the function of a jury to weigh testimony and determine the credibility of witnesses, unless the verdict is such as to raise a reasonable doubt of guilt, the reviewing court should not disturb it (*People v. Tribbett*, 41 Ill.2d 267, 242 N.E.2d 249). We do not believe that the finding of the jury in this case, on the basis of the record, was contrary to the evidence, and consequently do not believe we would be justified in disturbing such finding.

■■ Defendant also objects to the closing argument of the prosecutor and contends that it denied defendant a fair trial. The record shows that in the course of argument on behalf of defendant, defendant's counsel referring to Grudzinski (also known as Murphy) said:

"Now, I ask you, ladies and gentlemen, where was Frank Grudzinski? He could have been brought back here to testify. Yes, sir, he certainly could. But he was not here. He did not appear here to testify in this court room, and he is the only man who had—who could have contradicted the testimony of Sam Thomas.

I ask you, why didn't they bring him back in here and let him testify, and let him contradict the defendant? What is wrong with the prosecution who will not bring in the most interesting witness of the case? What were they afraid of?

No, ladies and gentlemen, they would rather try to impress you with some high-sounding titles of some law enforcement officials from Chicago with clean hands. They don't work with clean hands. They work with informers, so that they will be—so that they will get a deal in the case.

\* \* \* \*

I believe and we all believe in law and order, but this is the prostitution of law and order, ladies and gentlemen; this is damnable. It should be condemned, and you are here and you can condemn it.

They came down here from Chicago and made phone calls and used trickery—they are clever; this is their business. And they have failed, because they are immoral. They can't follow that commandment given to Moses, 'Thou Shalt Not Lie.' And their whole life is a lie. They dressed as a lie. They lied to him.

Now, ladies and gentlemen of the jury, the Prosecutor will have a chance to answer me, and I might say that he has somewhat of an edge. Let him answer me to your satisfaction on why this missing witness was not produced here, what actually happened \* \* \*.

We don't know what he could have said, but he wasn't here, he wasn't

brought into this court room to testify. The prosecution never produced him. The prosecutor didn't want him here."

The State's Attorney, in reply to such argument, stated:

"Well, ladies and gentlemen of the jury, if Mr. Murphy did make some kind of a deal, he must have been pretty dumb, because he is now in the federal penitentiary, and the story would not have been any different than it was here today. * * *

When the defense counsel refers to a reasonable doubt in your minds, could you yourself, in your own conscience, let this man go free? It must be a reasonable doubt, not just any doubt, not some shadow that you can put your finger on. It is a doubt of a reasonable person, and you must remember that you want to bear that in mind, ladies and gentlemen, you have a serious obligation not to turn this felon loose on the community, if you are convinced beyond a reasonable doubt that he is guilty."

It is thus evident that the commentary of the prosecutor was responsive to the statements made by the defense. The reply, substantially, seems to have been a pertinent response which was induced by counsel for the defense.

■■■ Objection is made to the fact that in the course of the argument on behalf of the State, the State's Attorney told the jury "not to turn this felon loose on the community, if you are convinced beyond a reasonable doubt that he is guilty." There was no necessary implication, in such statement, that the defendant had been convicted of any other crimes, but in the context in which the statement was made, it is apparent that the jury was told that if defendant was guilty beyond a reasonable doubt and the jury so found they should not turn him loose, presumably because under such conditions he would be a felon. While it might have been better practice not to have used this expression, we do not believe that its use constitutes reversible error on the record before us. Where the evidence warrants a belief that the accused is guilty, the prosecutor may imply terms appropriate to the nature or degree of turpitude involved in the crime charged. See *People v. Snell*, 74 Ill.App.2d 12, 219 N.E.2d 544; *People v. Sullivan*, 22 Ill.2d 122, 174 N.E.2d 860.

A final contention is made that the definition of the offense of possession of explosives which was tendered to the jury in the form of I.P.I. Criminal Instruction No. 15.07 was erroneous. Such instruction was as follows: "A person commits the crime of possession of explosives who knowingly possesses an explosive compound knowing that another intends to use the explosive to commit a crime." It is contended that the instruction was improper because it fails to define the offense with which

defendant is charged. It is contended that it does not impress upon the jury that in order to return a verdict of guilty, the jury must be convinced that defendant was consciously aware that another planned to use the explosives to commit a felony. The word "crime" is used in the approved I.P.I. instruction. It is contended that this is a vague and ambiguous term and is not synonomous with the technical requirements of a felony. ■■ No objection was made to the giving of such instruction in the trial court. Defects in instructions are waived unless objection thereto is made in such court (*People v. Kelley*, 105 Ill.App.2d 481, 244 N.E.2d 818). The only exception to the rule of waiver is that substantial defects are not waived in criminal cases by a failure to make a timely objection, if the interest of justice so requires (1969 Illinois Revised Statutes, Ch. 110A, Par. 451—Supreme Court Rules). The Supreme Court Rule places upon one who seeks, in a reviewing court, to avoid a waiver or failure to make a specific objection, the burden of establishing both, that the defects in the instruction are substantial, and, that the giving of the instruction resulted in denying defendant a fair trial and justice (*People v. Price*, 96 Ill.App.2d 86, 238 N.E.2d 881). We note that in the cause before us, I.P.I. Criminal Instruction No. 15.08 was also given to the jury, in the following form:

"To sustain the charge of possession of explosives, the State must prove the following propositions:

First: That the defendant knowingly possessed an explosive compound; and

Second: That the defendant knew that another intended to use the explosive compound to commit a crime; and

Third: That the defendant was not entrapped.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The indictment in the instant case included a phrase "to commit an offense for which one of the possible penalties is imprisonment in the penitentiary * * *". Likewise, throughout the trial, both the prosecution and defense focused on the crime for which the dynamite was to be used. It was apparent from the record that the jury should have been well aware what the indictment was based upon in this cause.

We conclude, therefore, that when the instructions were read as a whole they focused the attention of the jury upon the guilt or innocence of defendant with respect to the crime charged in the indictment. Under

such circumstances, we do not believe that the giving of such instruction constituted reversible error. *People v. Rosenfeld,* 25 Ill.2d 473, 185 N.E. 2d 236.

For the reasons stated, the judgment of the Circuit Court of La Salle County will be affirmed.

Judgment affirmed.

SCOTT, and DIXON, JJ., concur.