THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT LEE DAVIS, Defendant-Appellant.

Second District    No. 80-646

Opinion filed May 10, 1982.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Robert E. Davison, of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Robert Lee Davis, was tried and convicted of rape, home invasion, and burglary in Lake County. He was sentenced to 30 years for the rape, 30 years on the charge of home invasion, and 15 years on the burglary charge, these sentences to run concurrently. Defendant appeals from the convictions and the sentences.

The defendant urges reversal on four grounds. He contends that the trial court erred first in allowing the prosecutor to take his fingerprints on the first day of trial and then in admitting a pretrial statement made by the defendant. He also contends that the home invasion statute is unconstitutionally vague and that the State failed to prove him guilty beyond a reasonable doubt.

We begin by discussing the propriety of allowing the State to take defendant's fingerprints.

On the first day of defendant's trial, the State's Attorney informed the trial court that the State was encountering some problem securing a chain witness for the purpose of presenting a fingerprint allegedly taken from the defendant. The State's Attorney moved under Supreme Court Rule 413(b) (73 Ill. 2d R. 413(b)) for production of defendant's fingerprints. The trial court granted the motion. On appeal, defendant contends that he was not afforded the reasonable notice required by Rule 413 and was thus prejudiced. We disagree.

Rule 413 provides in relevant part:

"(b). Whenever the personal appearance of the accused is required for the foregoing purposes, reasonable notice of the time and place of such appearance shall be given by the State to the accused and

his counsel, who shall have the right to be present. Provision may be made for appearances for such purposes in an order admitting the accused to bail or providing for his release."

On its face, the notice requirement of Rule 413 seems to be aimed at insuring that defendants will not be deprived of effective assistance of counsel during procedures such as fingerprinting. The committee comments appended to the rule also suggest that such is the rationale. It is noted therein that Rule 413 is intended to be consistent with the ruling set down in *Gilbert v. California* (1967), 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. In that case, the court discussed the right of a defendant to have counsel present at "critical stages" in order that the defendant would not be deprived of the benefit of effective cross-examination. It is this prejudice, the inability to properly and effectively cross-examine, that the rule was designed to avoid. The cases applying Rule 413 and cited by the defendant for the proposition that reversal is required have, without exception, emphasized the presence of counsel. See *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40.

No deprivation in this regard is suggested by this record. Defendant's counsel was given the opportunity to examine the print and to be present at the time it was taken. The court agreed at the time that it granted the State's motion that defendant would be granted a continuance if he felt such a delay was necessary to adequately address issues raised by the late taking of the fingerprint. A short recess was in fact requested and granted.

The defendant is correct in his assertion that according to Illinois law the discovery rules have as their purpose, *inter alia*, the elimination of surprise. (*People v. Szabo* (1977), 55 Ill. App. 3d 866, 371 N.E.2d 117.) The cases applying this rule, however, have focused on the requirement that no tactical advantage may be gained by surprise. Here, we can conceive of no tactical advantage obtained by the prosecution by virtue of the late taking of the fingerprint.

■■ Defendant also argues that in failing to disclose, pursuant to his motion for particulars dated May 14, 1980, that a chain of evidence problem existed, the State violated Supreme Court Rule 412 (73 Ill. 2d R. 412), which requires discovery. The chain problem in this case apparently involved the proof of continuous possession of the "known print" allegedly taken from the defendant and marked with his name. Rule 412 mandates the disclosure of names and statements of witnesses to be called by the State, statements made by the accused, transcripts of relevant portions of grand jury proceedings, the reports of experts, tangible objects intended for use at trial, and prior criminal records of prosecution witnesses. The rule does not require the disclosure of evidentiary weaknesses.

The defendant's next contention is that the court erred in allowing the State's Attorney to use a pretrial statement made by him. Defendant

relied at trial on an alibi defense. He testified and his testimony was corroborated by other defense witnesses, that on the evening before the crime, he and several friends had gone to a disco and then to the home of LaVerne Gray. Defendant testified that he passed out there in the early morning hours of March 17 and did not awaken until 10 a.m. He also testified that later that day, "in the evening," he and two companions left for Milwaukee. The State's Attorney attempted to impeach, using the defendant's statement (testified to earlier by a police officer) that he had spent the day of the crime in Milwaukee.

■■ The defendant raises two issues in respect to the admissibility of this statement. First, defendant contends that this statement should not have been admitted since it was not disclosed in discovery. This contention is utterly without merit. The transcript of a pretrial hearing indicates that the defendant had knowledge of the statement in advance of the trial. His counsel referred specifically to the March 19 statement in a suppression hearing. Further, the fact that the record contains no written response to defendant's motion for discovery inquiring about chain witnesses to be presented by the State does not, as defendant contends, establish that the State refused to reveal this information. It is settled that a silent record will be construed against the appellant and not the appellee. *People v. Spellman* (1978), 58 Ill. App. 3d 648, 374 N.E.2d 1034.

● 3 Defendant also contends that the statement was inadmissible as impeachment since it did not "totally contradict" his testimony. Defendant's objection to the impeachment at trial centered on what he considered to be an attempt by the State to impeach with pretrial silence. He did not object on the grounds that the statement was insufficiently contradictory nor did he raise that objection in his post-trial motion. Defendant has therefore waived this issue on appeal. *People v. Nelson* (1980), 92 Ill. App. 3d 35, 415 N.E.2d 688.

■■ However, even on the merits, the trial court was correct in its ruling on this point. The statement was already properly in evidence, having been introduced in the State's case-in-chief, and therefore, the State was not attempting to *introduce* the defendant's prior inconsistent statement as impeachment. The questioning by the State's Attorney served merely to emphasize what was already in evidence before the court. Further, in the context of the entire record, the contested statement does appear to contradict the defendant's in-court testimony. At the time of his arrest, the defendant told police officers that he had been in Milwaukee on March 17. He testified in court that he had left for Milwaukee on the evening of the 17th. The test of whether a prior inconsistent statement is sufficiently inconsistent to be used for an impeachment was stated in *People v. Rainford* (1965), 58 Ill. App. 2d 312, 320-21, 208 N.E.2d 314:

"Generally, a prior statement of a witness, in order to be capable

of being proved for purposes of impeachment, must be materially inconsistent with his testimony. The test to be applied in determining inconsistency * * * is that the inconsistent statement must have a reasonable tendency to discredit the direct testimony on a material matter. McCormick on Evidence, c. 5, §34, p. 64 (1954)."

There is no case law requiring "total" inconsistency. Further the fact that defendant has an explanation for the statement does not work to remove the facial inconsistency.

*People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843, and *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857, cited by the defendant are not applicable to the case at bar. These cases ruled on attempts to use a defendant's pretrial silence against him. That issue is not presented by this case. The trial court's ruling was correct in this regard and accordingly we affirm on this point.

Defendant contends that the statute is void for vagueness in that it conditions culpability upon whether or not the individual has "reason to know" that someone was on the premises at the time he entered the residence. He contends that "reason to know" is not among the mental states outlined in the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, pars. 4—4 through 4—7), and, as an undefined mental state requirement works to render the statute unconstitutionally void for vagueness. We disagree.

Section 4—5 of the Criminal Code defines the mental state of knowledge as follows:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature of attendant circumstances of his conduct, * * * when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists." (Ill. Rev. Stat. 1979, ch. 38, par. 4—5.)

The concept of having reason to know that one or more persons are present is indistinguishable from that of having "awareness of a substantial probability" that one or more persons are present. The mental state provided in the home invasion statute is contained in the definition of knowledge.

■■ The defendant also contends that the statute is vague because it would allow convictions on the whimsey of the trial court. The factor which determines whether or not a statutory provision will be stricken as void for impermissible vagueness is whether its terms are of sufficient specificity to serve as a guide for those to whom it applies. (*City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, 248 N.E.2d 71, *cert. denied* (1969), 396 U.S. 39, 24 L. Ed. 2d 208, 90 S. Ct. 263.) In interpreting a statute, its words will be given their ordinary meaning unless a contrary

legislative intent is expressed. *People v. Williams* (1967), 79 Ill. App. 2d 56, 222 N.E.2d 915; *People v. Schwartz* (1976), 64 Ill. 2d 275, 356 N.E.2d 8, *cert. denied* (1977), 429 U.S. 1098, 51 L. Ed. 2d 545, 97 S. Ct. 1116.

When the words of the home invasion statute are viewed in this manner, the behavior which is prohibited becomes apparent. It would have been an impossible task for the legislature to provide an exhaustive "laundry list" of those conditions which would give an individual reason to know that someone was present in the house. We reject the defendant's contention that the home invasion statute is impermissibly vague.

The defendant next claims that the judgment of the trial court must be reversed since he was not properly convicted. It is defendant's position that the State failed to prove beyond a reasonable doubt all the essential elements of the crimes of home invasion and burglary with intent to rape. The Illinois home invasion statute provides:

, "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place.

(b) Sentence. Home invasion is a Class X felony." Ill. Rev. Stat. 1979, ch. 38, par. 12—11.

It is defendant's contention that the statute requires the State to prove as a material element of the offense that the individual accused of home invasion was not a "peace officer acting in the line of duty." It is defendant's position that no direct evidence was admitted on this point and therefore reversal of the conviction is required. The State asserted at trial, and the trial court agreed, that the language of the statute creates an affirmative defense and is not an element of the crime.

The characterization of this "peace officer" language has been the object of some split in authority. No court has previously addressed, as we are asked to, the question of whether the language delineates an element of the offense of home invasion in the context of an appeal from a conviction. However, two courts have analyzed the language to determine whether its omission from an indictment constitutes a material or merely a formalistic defect. In *People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489, the court found that the omission of an allegation that the defendant acted "without authority" was not a formal defect and thus was not susceptible of cure by amendment of the indictment. The court noted that section 111—3(a)(3) of the Code of Criminal Procedure, dealing with

indictments, requires that an indictment shall set forth the "nature and elements of the offense charged." (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(a)(3).) The court found that the first element of home invasion was "one of status, *as is emphasized by the exclusion of peace officers in the line of duty*, and the failure to allege such status" constituted a fatal defect in the information. (Emphasis added.) *People v. Pettus* (1980), 84 Ill. App. 3d 390, 393, 405 N.E.2d 489.

In *People v. Hert* (1981), 95 Ill. App. 3d 871, 420 N.E.2d 813, the court found that the omission of the peace officer language from an indictment *was* a formal defect subject to amendment and not necessitating dismissal of the charge. The court held that the allegation that defendant had entered without authority was sufficient to meet the requirement of section 111—3(a)(3).

■■ We find that the language in question delineates a material element of the crime of home invasion. Other cases dealing with this type of constructional problem have typically found an affirmative defense only where the questioned provisions have been contained in a list of exemptions, specifically designated as such. (*People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472.) The "peace officer" language in the home invasion statute occurs in the body of the statute.

Even though we find that this language constitutes a material element of the substance of offense of home invasion, the order of the trial court nevertheless is affirmed. Although no direct evidence concerning defendant's status of the peace officer was adduced at trial, there is sufficient circumstantial evidence contained in the record to establish beyond a reasonable doubt that he was not "acting in the line of duty." (*Cf. People v. Blakeney* (1978), 59 Ill. App. 3d 119, 375 N.E.2d 1309 (holding that, due to the nature of the crime, burglary may be proved by circumstantial evidence).) The record contains evidence tending to show that the defendant entered the home of Mrs. Mabel Self on March 17, 1980, between 3 and 4 a.m. He woke her up, covered her face, ordered her to shut up and demanded money and jewelry. Evidence produced in court tended to show that the defendant ordered Mrs. Self to take off her clothes and then proceeded to rape her. Further evidence indicated that he bound her wrists and legs and took her television as he left. Such actions are completely inconsistent with the claim that the defendant, even if a peace officer, was acting in the line of duty. Webster's New Collegiate Dictionary 663 (1979) defines "line of duty" as "all that is authorized, required, or normally associated with some field of responsibility." The defendant's contention that police officers can act in the line of duty while committing blatantly illegal acts strains credulity.

The defendant also contends that it was not proved beyond a reasonable doubt that he knew or had reason to know that someone was

present when he entered the house. Sufficient evidence appears in the record to justify a conviction for home invasion on this point.

The record indicates that entry was made into the home in the early hours of the morning at a time when occupants of a residence would be at home and asleep. The television set was on indicating that someone was in the house. Further, the building was a residence and obviously kept up, thus giving notice that an occupant might be within.

Moreover, the record indicates that the defendant's actions and statements demonstrated that he knew Mrs. Self would be present when he entered her home. The defendant showed an awareness of Mrs. Self's circumstances, referring to her son-in-law and an amount of money that she had in the house. He woke her up immediately upon entering and forced her to disclose places where she had secreted money. The element of reason to know was proven beyond a reasonable doubt.

■■ The defendant further contends that there was insufficient evidence to uphold a verdict of guilty on the count of burglary with intent to commit rape. It is defendant's position that no proof was offered to show that he knew that a potential rape victim was in the dwelling. It is well settled in Illinois that in burglary prosecutions, felonious intent may be established circumstantially. (*People v. Fisher* (1980), 83 Ill. App. 3d 619, 404 N.E.2d 859.) Where an intent to commit a specific crime is charged as an element of burglary, as it was in this case, that intent may be shown circumstantially by proof that the crime, in fact, occurred. (*People v. Kerestes* (1976), 38 Ill. App. 3d 681, 348 N.E.2d 274.) Such proof was adduced in this case, and we affirm the conviction.

Since we decline to reverse in this case we need not reach defendant's argument that he is entitled to a new sentencing hearing.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.