THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JORDAN D. REYNOLDS, Defendant-Appellant.

Second District   No. 2—03—0816

Opinion filed July 12, 2005.

208

O'MALLEY, P.J., dissenting.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Terry M. Kurt, State's Attorney, of Galena (Lawrence M. Bauer and Sabrina S. Henry, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KAPALA delivered the opinion of the court:

After a bench trial before the circuit court of Jo Daviess County, defendant, Jordan D. Reynolds, was found guilty of felony criminal trespass to a residence (720 ILCS 5/19—4(a)(2) (West 2002)), as a lesser-included offense of the charged offense of residential burglary (720 ILCS 5/19—3 (West 2002)), and battery (720 ILCS 5/12—3(a)(2) (West 2002)), as a lesser-included offense of the charged offense of aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 2002)). Thereafter, defendant was sentenced to concurrent terms of conditional discharge. Defendant appeals contending that: (1) his conviction of felony criminal trespass to a residence must be reversed because the State failed to prove the essential element of entry without authority; (2) he must be granted a new trial because the record does not show that the trial court obtained an understanding waiver of his right to a jury trial in open court; and (3) his conviction of felony criminal trespass to a residence must be reduced to a misdemeanor conviction of that offense because the felony form is not a lesser-included offense of residential burglary. For the reasons that follow, we reject defendant's first and second appellate contentions, but accept his third.

## I. FACTS

In a two-count indictment filed on August 30, 2002, defendant was charged with residential burglary (720 ILCS 5/19—3 (West 2002)) and

aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1)(i) (West 2002)). The cause proceeded to a bench trial.

The State called 12-year-old E.L., who testified that she lives at 635 5th Street in East Dubuque. On May 31, 2002, she was at home with her parents, her brothers Matthew, Brian, and Adam, and her friend who was staying the night. E.L. slept on the couch that night and at some point woke and noticed that defendant was lying next to her, rubbing her back. E.L. said that she was lying on her stomach and defendant was on his side with his body against her. E.L. explained that defendant was moving his hand up and down and in circles on her back, coming within an inch of her buttocks. When E.L. tried to get up, defendant pushed her down and said "shh." E.L. elbowed defendant's arm away, jumped over his legs, and ran down to the hallway by the bathroom. E.L. was scared, curled up in a ball, and started crying. E.L. also testified that defendant was a friend of her brother Brian and had been to her house on a number of occasions prior to this incident.

Matthew L. testified that he is 14 years old and lives at 635 5th Street in East Dubuque. On June 1, 2002, in the early morning hours, Matthew was asleep in a chair in the living room. Matthew said that he saw defendant come into the living room and walk over to the couch where his sister E.L. was sleeping. Matthew ran down to the bathroom because he was scared. When Matthew came out of the bathroom, E.L. came running down the hall and started screaming that defendant was right next to her. To Matthew's knowledge, neither he nor anyone else in his household gave defendant permission to be in the house that morning. Matthew said that defendant was a good friend of his brother Brian and that defendant had been to his house many times. Matthew testified that there was nothing unusual about defendant being at their house, but being there at 3 a.m. was a little different.

Anna M. testified that she is 11 years old and that she spent the night at her friend E.L.'s house on May 31, 2002. Anna slept on a small couch in the living room while E.L. slept on a larger couch in the same room. At some point during the night, Anna saw E.L. run from the couch and somebody sitting on the couch. When Anna went to see what was wrong, she found E.L. curled up with her face in her knees crying. E.L. told Anna and Matthew that it was defendant.

Adam L. testified that he is 17 years old and lives at 635 5th Street in East Dubuque. Adam said that at about 3 a.m. on June 1, 2002, he was at home sleeping in his bedroom when he heard a scream and a door slam. Adam found his sister E.L. curled up in a ball shaking. Adam testified that, approximately three weeks before the incident, he

was sleeping on the couch, and he turned around, and defendant was right there. Defendant said that he was looking for Brian. Adam did not give defendant permission to be in the house that night or on the morning of June 1, 2002. Adam also testified that defendant would ordinarily ring the doorbell when he came to their house.

The State called David L., who testified that he owns the home at 635 5th Street in East Dubuque. On June 1, 2002, at approximately 3:10 a.m., David was awoken by his daughter screaming. David found E.L. by the bathroom crying. E.L. told him that defendant had come in the house, laid down next to her, rubbed her back, and told her to be quiet. After calming his daughter down, David telephoned defendant. When David asked defendant if he had been at David's house, defendant said no but added that he had been to a party in the neighborhood. When David told defendant that three people saw him in the house, defendant denied being there. When David told defendant that he was going to report the incident to the police, defendant continued to deny that he was in the house. Defendant also denied being on drugs or alcohol. After David gave defendant one final opportunity to provide a straight answer, defendant said that he was in front of the house, but did not come inside. David told defendant that he was going to call the police. David testified that defendant did not have permission to be in his house on June 1, 2002.

The testimony of East Dubuque police officers established that defendant was 17 years old on June 1, 2002, and that defendant was seen at about 3:10 a.m. at a location that is between the house in question and his own residence. When officers asked defendant to give a statement about what happened on June 1, 2002, defendant refused.

Defendant called Brian L., who testified that he has known defendant since the second grade and that defendant had been to his house a number of times in the year preceding the incident. Brian testified that he was not aware that defendant entered his house on June 1, 2002, because he slept through whatever occurred.

Defendant testified that in May 2002, Brian L. was one of his good friends. On May 31, 2002, defendant went to a party where he consumed "quite a few" alcoholic beverages. According to defendant, earlier that night he had spoken to Brian and was under the impression that Brian was going to the party. Brian did not attend. While at the party, defendant unsuccessfully attempted to contact Brian by telephone. Defendant said that he left the party at about 3 a.m. and went to Brian's house with the intention of getting Brian and returning to the party. Defendant said that he entered Brian's house through the front door and went upstairs to the living room, where he saw Matthew on the chair, someone he did not recognize on the small

couch, and someone on the large couch. Defendant testified that he peeled back the cover on the person sleeping on the large couch and saw that it was E.L. Defendant tried to wake E.L. by shaking her and saying her name over and over. Defendant said that he pushed E.L. and said "Where's your brother?" With that, E.L. sprang up and ran. Defendant denied ever lying on the couch or saying "shh." Defendant said that after E.L. left the room, he slowly left the house the same way he entered. Defendant said that he previously had entered the house late at night. Defendant stated that, a couple times in the past, Brian had known that he was coming and he would go in the house and they would either go out together or stay at Brian's house. Defendant admitted that Brian did not know he was coming at 3 a.m. on June 1, 2002. Defendant said that he told David L. that he had not been inside the house because he thought that David L. was accusing him of stealing something from the house.

During the State's rebuttal case, E.L. testified that she was not using a cover on the night in question as she slept on the couch in the living room.

The trial court found defendant not guilty of aggravated criminal sexual abuse because the State failed to prove beyond a reasonable doubt that defendant's touching of the victim was for the purpose of defendant's sexual arousal. However, the trial court found that defendant's touching of the victim constituted the lesser-included offense of battery (720 ILCS 5/12—3(a)(2) (West 2002)), that is, a touching of an insulting or provoking nature without legal justification. The trial court also found defendant not guilty of residential burglary because the State failed to prove that defendant entered the residence with the intent to commit aggravated criminal sexual abuse. However, the trial court found that defendant committed the lesser-included offense of felony criminal trespass to a residence (720 ILCS 5/19—4(a)(2) (West 2002)) where defendant knew that there were people in the residence at the time. Defendant's posttrial motion was heard and denied. Thereafter, the trial court sentenced defendant to two concurrent, two-year terms of conditional discharge that included six months in the county jail served on a work release basis and a $1,000 fine. Defendant timely appeals.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant's first appellate contention is that the State failed to prove beyond a reasonable doubt that his entry into the residence was not authorized and, therefore, failed to prove all the elements of felony criminal trespass to a residence. More specifically, defendant argues

that the State's evidence failed to establish that the children of the residence, especially Brian L., had not granted defendant implicit permission to enter the residence in the middle of the night. In support of this argument, defendant asserts that the evidence shows that defendant was a frequent visitor at the residence and had entered the residence at night on at least one previous occasion. The State contends that it proved beyond a reasonable doubt that defendant entered the residence without authority. We agree with the State.

■ In its felony form, the offense of criminal trespass to a residence is as follows:

"A person commits the offense of criminal trespass to a residence when, without authority, he or she knowingly enters the residence of another and knows or has reason to know that one or more persons is present or he or she knowingly enters the residence of another and remains in the residence after he or she knows or has reason to know that one or more persons is present." 720 ILCS 5/19—4(a)(2) (West 2002).

The State has the burden of proving each element of the offense beyond a reasonable doubt. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). On appeal, a criminal conviction will not be set aside on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of defendant's guilt. *Maggette*, 195 Ill. 2d at 353. " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

■ Viewed in a light most favorable to the State, it is clear that a rational trier of fact could have concluded that the "without authority" element of the offense was proved beyond a reasonable doubt. Matthew L., Adam L., and David L. each testified that defendant did not have permission to enter the residence at 3 a.m. on June 1, 2002. Neither the fact that defendant had been at the house multiple times before this incident nor the fact that defendant entered the residence at night on a date three weeks before the entry in question contradicts the testimony that defendant was without authority to enter on the morning in question. Moreover, defendant's testimony that he would enter the residence without explicit permission when Brian knew that he was coming does not establish that he had implicit authority to enter at will at any time. Even if defendant was permitted to enter without requesting permission when Brian knew that he was coming

to the residence, the evidence shows that Brian did not know that defendant was coming to the house at 3 a.m. on June 1, 2002. Under these circumstances, the evidence was sufficient to show that defendant entered the residence "without authority."

## B. Waiver of Right to Jury Trial

■ Defendant's second appellate contention is that he must be granted a new trial because the record on appeal does not show that the trial court obtained an understanding waiver of his right to trial by jury in open court. We reject this contention.

Initially, the State argues that defendant has waived this issue for failure to raise it in the trial court. This argument clearly lacks merit because, as pointed out by defendant, the issue is reviewable as plain error. Defendant's failure to question the validity of the jury waiver in the trial court, either by objection or in a posttrial motion, does not amount to a forfeiture of the issue on appeal. *People v. Bracey*, 213 Ill. 2d 265, 270 (2004). A criminal defendant's right to trial by jury is fundamental, and the issue of whether that right has been violated is reviewable under the plain error rule. *Bracey*, 213 Ill. 2d at 270; *In re R.A.B.*, 197 Ill. 2d 358, 363 (2001); *People v. Victors*, 353 Ill. App. 3d 801, 805 (2004).

The record discloses that this cause was scheduled for a February 3, 2003, jury trial. At the January 14, 2003, final pretrial conference, defendant appeared in court with counsel and the February 3, 2003, jury trial date was confirmed. The next three docket entries in the common-law record are dated January 29, 30, and 31, 2003. There are no reports of proceedings corresponding to these dates. The docket entry for January 29, 2003, is as follows:

"SA Weber, Atty Bush pres.

Def is going to waive jury and request a bench trial.

Further proceedings set for 01/30/2003 at 03:00 in courtroom 1.

Bench trial set for 04/01/2003 at 09:00

Motion to Waive Jury Filed."

The "Motion to Waive Jury" filed by defendant's counsel contains the language, "[t]hat based on the circumstances and the nature of the crime and the Discovery that has been provided, the Defendant believes that it would be in his best interest to waive the jury and have a trial by this court." In the motion, counsel requested that the "Court grant defendant leave to Waive Jury and set this matter for trial at the convenience of the Court, as a bench trial."

The docket entry for January 30, 2003, provides "Waiver of Jury Trial and Plea Filed." The following document was filed on January 30, 2003:

214

■■■■■■■   ■■■■■■■

**"STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
JO DAVIESS COUNTY**

PEOPLE OF THE STATE OF ILLINOIS
        vs.                      CASE 02—CF—98
JORDAN REYNOLDS

**WAIVER OF JURY TRIAL AND PLEA FILED**

The undersigned in open court understanding [sic] and knowingly waives his/her rights to a trial by jury in the cause herein. Said defendant further ~~WAIVES or~~ **CONSENTS** [to] a trial by the court without a jury and pleads ~~GUILTY or~~ **NOT GUILTY** to the charge herein.

> Defendant: s/ Jordan Reynolds
> Address: _____
> City: _____ State: _____ Zip: _____
>
>         Signed and Sworn to Before Me on
>         _____, 200__
>
>         s/ William A. Kelly_____
>                 JUDGE"

The docket entry for January 31, 2003, provides "Order Filed." The order reads:

> "This cause having come before the Court upon the defendant[']s waiver of jury and all parties being present the Court further orders:
>
> (1) This cause is set for Bench Trial on April 1, 2003 at 9 a.m.
>
> (2) Witnesses *** shall be present on 4-1-03 at 9 a.m. to testify *** ."

At the beginning of the proceedings on April 1, 2003, Judge Kelly identified the case, stated that the attorneys and defendant were present, and announced that "[t]his matter was set today for bench trial." Thereafter, each attorney answered ready for trial, and the bench trial commenced.

In this case, because defendant was charged with offenses punishable by terms of imprisonment in excess of six months, defendant had a right to a trial by jury under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV). *Codispoti v. Pennsylvania*, 418 U.S. 506, 512-13, 41 L. Ed. 2d 912, 919, 94 S. Ct. 2687, 2691 (1974). Like other constitutional protections, the right to a jury trial can be waived. However, it is well settled that a written waiver of a criminal defendant's right to trial by jury standing alone does not constitute a valid waiver of this fundamental constitu-

tional right. *People v. Scott*, 186 Ill. 2d 283, 284 (1999). In *Scott* our supreme court outlined the requirements of a valid waiver of the right to a jury trial:

"Section 103—6 of the Code of Criminal Procedure of 1963 (Code) provides that a bench trial may be held if the right to trial by jury is 'understandingly waived by defendant *in open court.*' (Emphasis added.) 725 ILCS 5/103—6 (West 1992). Section 115—1 of the Code further provides that a waiver of jury trial should be in writing. 725 ILCS 5/115—1 (West 1992). Reading these provisions together, this court recently held that failure to file a written waiver does not require reversal '*so long as* the defendant's waiver was made understandingly *in accordance with section 103—6 of the Code of Criminal Procedure.*' (Emphasis added.) *People v. Tooles*, 177 Ill. 2d 462, 468 (1997). Thus, a defendant validly waives his right to a jury trial only if made (1) understandingly; and (2) in open court. 725 ILCS 5/103—6 (West 1992).

We have never found a valid jury waiver where the defendant was not present in open court when a jury waiver, written or otherwise, was at least discussed." (Emphasis in original.) *Scott*, 186 Ill. 2d at 284-85.

It is the trial court's duty to ensure that a defendant's waiver of his right to a jury trial is made understandingly. *People v. Smith*, 106 Ill. 2d 327, 334 (1985). However, the validity of a jury waiver cannot rest on any precise formula but, rather, depends on the facts and circumstances of each particular case. *In re R.A.B.*, 197 Ill. 2d at 364; *People v. Frey*, 103 Ill. 2d 327, 332 (1984). Where facts are not in dispute, the question of whether a defendant validly waived his right to a jury trial is one of law subject to *de novo* review. *In re R.A.B.*, 197 Ill. 2d at 362.

Defendant argues that the record on appeal does not show that his waiver of his right to a jury trial was made in open court and understandingly, because there were no proceedings in court on January 30, 2003, when such an understanding waiver could have been made. In support of his argument defendant relies on the affidavit of Tammy Stephenson, certified electronic recorder operator,[1] which provides in pertinent part:

"I, Tammy Stephenson, hereby certify that I trained in the use and operation of the computer based digital system installed in the Jo Daviess County Courthouse. I further certify that I have done a search of the CourtSmart digital recording system and find no sessions recorded in the above entitled cause on 1/29/03, 1/30/03 or 1/31/03."

---

[1] We granted defendant's motion to supplement the record on appeal with this document.

Defendant acknowledges that it is his duty as appellant to supply a sufficient record on appeal to support his appellate contentions but maintains that he has provided a complete record and that the record is silent as to whether his waiver of his right to a jury trial was made in open court and understandingly. Defendant concludes that, because there were no proceedings in open court on January 30, 2003, his written jury waiver in the common-law record is contradicted such that we cannot conclude that an understanding waiver was made in open court.

In response, the State argues that the common-law record shows that defendant did waive his right to a jury trial and, to the extent the record is insufficient, we must presume that the trial court's judgment conformed with the law and ensured that defendant's waiver was valid. We believe that our supreme court's decision in *Smith* is controlling.

In *Smith* the court explained:

"Review of the validity of a defendant's waiver of his right to a jury trial depends, of course, on the existence of an adequate memorial of the event, if it occurred at all. [Citation.] Given the statutory requirement that a jury waiver be made in open court, a suitable report of the proceeding in which the waiver is supposed to have occurred will be an essential part of the record in an appeal that raises the question. The necessary report may take any one of several forms—our rules provide that if a verbatim transcript of a proceeding is not available, a party may submit in its stead a proposed report of proceedings or an agreed statement of facts. (87 Ill. 2d Rules 323(c), 323(d), 612(c); [citation].) Responsibility for preserving and presenting a sufficient record of the asserted error necessarily falls on the party who makes the assertion of error. [Citations.] Therefore, when an entry in the common law record indicates that a jury waiver has been made, a defendant seeking review of that question should include in the record on appeal a transcript, or suitable substitute for one, of the corresponding proceeding. Only by that means can a court of review determine whether the entry in the record reflects a valid jury waiver. In *People v. Oatis* (1977), 47 Ill. 2d 229, 232, the court correctly observed:

'[I]n a criminal case when the common law record shows that the defendant has waived jury trial, on appeal after a bench trial, a defendant claiming error in the jury waiver must cite the specific error that occurred and substantiate that claim by the presentation of a sufficient record. If the claim is that the jury waiver was not made in open court or that it was not understandingly made, the record should be sufficient to cover all proceedings which involved the waiver.' " *Smith*, 106 Ill. 2d at 334-35.

*Smith* involved a consolidated appeal. *Smith*, 106 Ill. 2d at 331. Defendant Smith was charged with reckless conduct and was served with a summons directing him to appear on December 7, 1982, in the Mendota branch of the circuit court of La Salle County. *Smith*, 106 Ill. 2d at 331. Defense counsel filed an entry of appearance on December 7. *Smith*, 106 Ill. 2d at 331. The December 7 entry in the record sheets of the circuit court clerk read, " 'Attorney Reck entered his appearance to be sent to Ottawa for Bench trial before Judge Wimbiscus.' " *Smith*, 106 Ill. 2d at 336. No report of proceedings for December 7, 1982, if any were held on that date, was included in the record on appeal. *Smith*, 106 Ill. 2d at 336. The court in *Smith* concluded:

> "It was Smith's duty here, as the party appealing the circuit court judgment, to preserve and present on review an adequate record from which his allegation of error could be resolved. Without that, we must assume that the record indications of a jury waiver are indeed based on a valid waiver." *Smith*, 106 Ill. 2d at 336.

In this case, the common-law record establishes not only that defendant made a jury waiver, but also that the waiver was valid, that is, made understandingly in open court. The common-law record contains a document entitled "WAIVER OF JURY TRIAL AND PLEA FILED" signed by defendant, who therein swore that he *understandingly* waived his right to a trial by jury *in open court*. Judge Kelly signed this document under defendant's signature, indicating that defendant in fact signed the document and swore to the assertions contained therein before him. This indication that defendant waived his right to a jury trial in open court is not contradicted by the affidavit of Tammy Stephenson. Stephenson's affidavit establishes only that there was no recording made of any court proceedings held in this case on January 30, 2003. Stephenson's affidavit does not establish that there were no court proceedings in this case on that date. In order to substantiate a claim that he signed the "WAIVER OF JURY TRIAL AND PLEA FILED" other than in open court, defendant must provide us with a record in the form of a bystander's report or an agreed statement of facts (134 Ill. 2d Rs. 323(c), (d)) indicating that there were no proceedings in court on January 30, 2003. In the absence of some record showing that defendant did not waive his right to a jury trial in open court on January 30, 2003, we must assume that the indication in the common-law record that the waiver was made in open court is accurate. See *Smith*, 106 Ill. 2d at 336.

With respect to the "understandingly" component of a valid jury waiver, we conclude in similar fashion that the "WAIVER OF JURY TRIAL AND PLEA FILED" signed and sworn to by defendant before Judge Kelly shows that defendant made the waiver of a jury trial

understandingly. The document says as much. In the absence of a record of exactly what was said at the time the defendant executed this written jury waiver, we must assume that Judge Kelly acted in accordance with the law and fulfilled his duty to ensure that the waiver was made understandingly by discussing the waiver with defendant in open court. See *Scott*, 186 Ill. 2d at 285; *Smith*, 106 Ill. 2d at 336.

Unlike the facts in *Smith*, in this case there is a specific entry in the record that defendant waived his right to a jury trial as well as a signed jury waiver. We can conclude from the instant record only that defendant understandingly made a waiver of his right to a jury trial in open court on January 30, 2003. Therefore the jury waiver was valid (see *Scott*, 186 Ill. 2d at 285), and we reject defendant's contention that he is entitled to a new trial on this basis.

## C. Lesser-Included Offense

■ Defendant's final appellate contention is that his conviction of felony criminal trespass to a residence (720 ILCS 5/19—4(a)(2) (West 2002)) must be vacated because it is not a lesser-included offense of the residential burglary offense charged in count I of the indictment. Defendant requests that his conviction of felony criminal trespass to a residence be replaced with one of misdemeanor criminal trespass to a residence (720 ILCS 5/19—4(a)(1) (West 2002)), which defendant maintains is a lesser-included offense of the residential burglary offense charged in this case. The State argues that the trial court correctly determined that the felony form of criminal trespass to a residence was a lesser-included offense of the residential burglary offense charged in count I of the indictment. We agree with defendant.

Generally, a defendant cannot be convicted of an offense that was never charged. *People v. Ceja*, 204 Ill. 2d 332, 359 (2003); *People v. Baldwin*, 199 Ill. 2d 1, 6 (2002). However, a defendant may request a jury instruction on and, in turn, be convicted of an uncharged lesser-included offense. *Baldwin*, 199 Ill. 2d at 6. In Illinois, we determine whether an offense is a lesser-included offense using the two-tiered charging instrument approach. *Ceja*, 204 Ill. 2d at 360. The analysis of this issue is essentially the same regardless of whether the issue is the propriety of a defendant's request for a jury instruction on a lesser-included offense or the propriety of a trial court finding a defendant guilty at bench trial of a lesser-included offense. *Baldwin*, 199 Ill. 2d at 6. Whether a charged offense encompasses an included offense is a question of law that we review *de novo. People v. Landwer*, 166 Ill. 2d 475, 486 (1995).

The first tier of the charging instrument approach requires the reviewing court to determine whether the charging instrument

describes the lesser offense. *Ceja*, 204 Ill. 2d at 360. "At a minimum, the instrument charging the greater offense must contain a broad foundation or main outline of the lesser offense." *Ceja*, 204 Ill. 2d at 360. If the charging instrument describes the lesser offense, then the reviewing court moves to the second tier of the analysis and determines whether the evidence adduced at trial rationally supports the conviction on the lesser-included offense. *Ceja*, 204 Ill. 2d at 360. The second-tier issue is whether the evidence would permit a fact finder to rationally find the defendant guilty of the lesser-included offense, but acquit the defendant of the greater offense. *Ceja*, 204 Ill. 2d at 360-61.

Count I of the indictment reads as follows:

"That on or about **JUNE 1, 2002,** in Jo Daviess County, Illinois, one **JORDAN D. REYNOLDS,** hereinafter called the defendant, committed the offense of **RESIDENTIAL BURGLARY (CLASS 1 FELONY)** in violation of **Section 19—3 of Act 5 of Chapter 720** of the Illinois Compiled Statutes of said State, in that said defendant knowingly and without authority entered into the dwelling place of David [L.], located at 635 5[th] Street, East Dubuque, Jo Daviess County, Illinois, with the intent to commit therein the offense of Aggravated Criminal Sexual Abuse in violation of Section 12—16 (c) (1) [(i)] of Act 5 of Chapter 720 of the Illinois Compiled Statutes."

The trial court found defendant guilty of the uncharged offense of felony criminal trespass to a residence, which is defined as follows:

"A person commits the offense of criminal trespass to a residence when, without authority, he or she knowingly enters the residence of another and knows or has reason to know that one or more persons is present or he or she knowingly enters the residence of another and remains in the residence after he or she knows or has reason to know that one or more persons is present." 720 ILCS 5/19—4(a)(2) (West 2002).

We are presented with the issue of whether the residential burglary offense charged in count I of the indictment describes the lesser offense of felony criminal trespass to a residence. " 'The "lesser offense must have a broad foundation in the instrument charging the greater," or at least "set out the main outline of the lesser offense." ' " *Baldwin*, 199 Ill. 2d at 7, quoting *People v. Novak*, 163 Ill. 2d 93, 107 (1994), quoting *People v. Bryant*, 113 Ill. 2d 497, 505 (1986). "A charging instrument need not expressly allege all of the elements of the crime if those elements can be inferred from the language of the charging instrument." *Baldwin*, 199 Ill. 2d at 8. It is defendant's position that the "knows or has reason to know that one or more persons is present [within the residence]" element of felony criminal trespass to a residence cannot be inferred from the language of count I. We agree.

"Knowledge of a material fact includes awareness of the substantial probability that such fact exists." 720 ILCS 5/4—5(a) (West 2002). The mental state of having a reason to know, which is provided in the felony criminal-trespass-to-a-residence statute, is indistinguishable from the mental state of awareness of a substantial probability, which is included in the statutory definition of knowledge. See *People v. Davis*, 106 Ill. App. 3d 260, 264 (1982) (so concluding with respect to the same mental state within the home-invasion statute). The mental state of knowledge generally refers to an awareness of the existence of facts that make an individual's conduct unlawful. *People v. Gean*, 143 Ill. 2d 281, 288 (1991), citing 21 Am. Jur. 2d *Criminal Law* § 136 (1981). Therefore, the mental state of awareness of a substantial probability refers to a subjective awareness of the objective existence of a substantial probability that a fact exists. Consequently, in this case we must decide whether we can infer from the language of count I of the indictment an allegation of the actual existence of a substantial probability that someone was present within the residence.

Count I includes an allegation that "defendant knowingly and without authority entered into the dwelling place of David [L.]" Section 2—6(b) of the Criminal Code of 1961 defines the term "dwelling" as "a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2—6(b) (West 2002). Therefore, the allegation in count I that defendant knowingly entered a dwelling includes an allegation that he knowingly entered a place where people reside or where people intend to reside soon. We can infer, from the express allegation that defendant entered a dwelling, an allegation of a possibility that a person or persons were actually present within the dwelling at the time defendant allegedly entered. However, considering the allegation that defendant entered a place where people reside or where people intend to reside soon, we cannot infer an allegation of the actual existence of a substantial probability that a person or persons were present within the dwelling at the pertinent time. Even while presently residing in a dwelling, the inhabitants are frequently elsewhere. As such, we conclude that it is too tenuous to infer, from the express allegation that defendant entered a dwelling, an allegation of the actual existence of a substantial probability that someone was present within the dwelling at the time that defendant allegedly entered.

The language of count I also includes an allegation that defendant's entry into the dwelling place was "with the intent to commit therein the offense of Aggravated Criminal Sexual Abuse." Defendant argues

that the element of his knowing or having reason to know that a person is present within the residence is not encompassed by this allegation, because a person can enter a dwelling with the intent to commit aggravated criminal sexual abuse if he finds someone present in the dwelling without knowing or having reason to know that someone is present in the dwelling. We agree.

The offense of aggravated criminal sexual abuse includes an act of sexual conduct with a victim. 720 ILCS 5/12—16(c)(1)(i) (West 2002). The word "victim" means a person alleging to have been subjected to an offense. 720 ILCS 5/12—12(g) (West 2002). "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." 720 ILCS 5/4—4 (West 2002). Thus, the allegation of defendant's entry into the dwelling with the intent to commit an act of sexual conduct with a person includes an allegation that defendant had the conscious objective to victimize a person he encounters within the dwelling. However, all that we can infer from this allegation is that defendant had a subjective expectation that there was someone within the dwelling to victimize. From our examination of the allegation that defendant had such a subjective expectation, we cannot infer an allegation of the actual existence of a substantial probability that there was a person within the dwelling at the time defendant entered.

In light of our conclusion that the language of count I of the indictment does not describe the lesser-included offense of felony criminal trespass to a residence, we need not reach the second tier of the charging instrument approach. *People v. Davis*, 213 Ill. 2d 459, 477 (2004); *Ceja*, 204 Ill. 2d at 361. In sum, we conclude that the trial court erred in finding defendant guilty of the uncharged offense of felony criminal trespass to a residence, because the allegations in count I of the indictment did not sufficiently set forth a broad foundation or main outline of that crime to identify it as a lesser-included offense of the residential burglary offense charged in this case. Defendant concedes that the misdemeanor form of criminal trespass to a residence (720 ILCS 5/19—4(a)(1) (West 2002)) is a lesser-included offense of the residential burglary offense charged in count I of the indictment. Defendant asks us to vacate his conviction of and sentence for felony criminal trespass to a residence and remand the cause to the trial court for the entry of a judgment of conviction of misdemeanor criminal trespass to a residence and for sentencing on that conviction. The State agrees that this is the appropriate disposition should we conclude that felony criminal trespass to a residence is not a lesser-included offense of the residential burglary offense charged in this case. Therefore, we vacate

defendant's conviction of and sentence for felony criminal trespass to a residence and remand this cause to the trial court for the entry of a judgment of conviction of misdemeanor criminal trespass to a residence and for sentencing on that conviction.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Jo Daviess County in part, vacate it in part, and remand the cause to the circuit court with directions to enter orders consistent with this opinion.

Affirmed in part and vacated in part; cause remanded with directions.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE O'MALLEY, dissenting:

The majority concludes that the charging instrument here is insufficient because "the mental state of awareness of a substantial probability refers to a subjective awareness of the objective existence of a substantial probability that a fact exists" (359 Ill. App. 3d at 220) and the instrument does not adequately allege defendant's knowledge. I confess that I am unable to fully appreciate this sentence. Nonetheless, I do know that I disagree with the majority's conclusion, because a charging instrument need not expressly allege all of the elements of a crime if those elements can be inferred from the language of the charging instrument. *Baldwin*, 199 Ill. 2d at 8. I believe that the charge that defendant "knowingly and without authority entered into the dwelling place *** with the intent to commit therein the offense of Aggravated Criminal Sexual Assault" compels the inference that defendant acted with knowledge that someone was inside. The charging instrument alleges that defendant entered the home intending to commit a crime on a person; certainly, then, defendant would not have entered the home without reason to know that someone was inside. The inference that defendant knew someone was inside is not only reasonable; it is almost unavoidable.

Returning to the above-quoted sentence from the majority disposition, I also write separately to comment on the majority's conclusion that knowledge requires "subjective awareness of the objective existence of a substantial probability that a fact exists." 359 Ill. App. 3d at 220. In attempting to parse the above sentence, I consider the situation presented in *People v. Thomas*, 3 Ill. App. 3d 1079, 1083 (1972). In *Thomas*, the defendant was charged with possession of explosives,

which is committed when a person " 'knowingly possesses an explosive compound knowing that another intends to use the explosive to commit a crime.' " *Thomas*, 3 Ill. App. 3d at 1083 (quoting jury instruction). The defendant in *Thomas* had attempted to deliver explosives to an undercover police officer after the officer told the defendant that he intended to use the explosives to blow up a restaurant in Chicago. *Thomas*, 3 Ill. App. 3d 1079 (affirming defendant's conviction).

At first blush, the holding in *Thomas* would seem to contradict the majority's statement, because, objectively, the defendant was mistaken in his belief that the police officer intended to use the explosives to commit a crime. However, if I understand the majority's statement correctly, it may be considered consistent with *Thomas*, because, even though the defendant there was incorrect, he nonetheless had a subjective awareness of the objective existence of a substantial probability that the undercover police officer was what he was pretending to be and intended to use the explosives for a criminal activity. It seems the whole point of such undercover police work is premised on there being, objectively, a substantial probability that the officer is what he pretends to be. Using the more common undercover work of purchasing drugs as an example, I surmise such efforts would pass muster with the majority because, if the drug dealer knows that one in 1,000 of his potential customers is in reality an undercover police officer, then there remains "a subjective awareness of the objective existence of a substantial probability" that the officer is what he is pretending to be. In other words, 999 out of 1,000 represents a substantial probability. However, I do not think that criminal law is this obtuse. See also *State v. Lee*, 75 Haw. 80, 111-12, 856 P.2d 1246, 1263 (1993) ("mere fact that the [drug paraphernalia] buyer is actually an undercover police officer, which fact is unknown to the defendant, cannot render it 'factually and legally' *impossible* that the defendant should reasonably have known that the items sold would be used with illegal drugs" (emphasis added)). *Contra State v. Murphy*, 674 P.2d 1220, 1225 (Utah 1983) (because police informant posing as buyer did not intend to use items with controlled substances, it was "legally and factually impossible for the appellant to have known that the items sold would be used for illicit purposes as required for conviction").

In any event, the viability of the majority's pronouncement need not be settled here. Defendant was not operating under a mistake of fact—the notion of his mistaken belief comes only from the hypothetical situation upon which the majority relies. This hypothetical situation cannot defeat the inference from the charging instrument that defendant knew someone was inside the home when he entered it, and I therefore dissent from the majority's contrary position.