April 9, 1999

No. 2--98--0050 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, )

) No. 96--CF--1701

v. )

)

JAMES P. POULOS, ) Honorable

) Thomas E. Callum,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial, defendant, James P. Poulos, was found guilty of one count of criminal sexual assault (720 ILCS 5/12--

13(a)(2) (West 1996)) and two counts of criminal trespass to a residence (720 ILCS 5/19--4(a) (West 1996)).  The trial court sentenced defendant to concurrent periods of incarceration of 10 years for the criminal sexual assault and 365 days for the 2 counts of criminal trespass to a residence (which the trial court deemed merged).  Defendant appeals only from his conviction of criminal sexual assault and contends that the trial court erred when it refused to instruct the jury on the offense of battery, touching of an insulting or provoking nature (720 ILCS 5/12--3 (West 1996)), as a lesser included offense of criminal sexual assault.  We affirm.

Defendant was charged by a three-count indictment.  Count I alleged that defendant committed residential burglary (720 ILCS 5/19--3 (West 1996)) with the intent to commit theft when he entered the dwelling place of W.S. with the intent to commit a theft therein.  Count II alleged that defendant committed residential burglary (720 ILCS 5/19--3 (West 1996)) with the intent to commit criminal sexual assault when he entered the dwelling place of W.S. with the intent to commit criminal sexual assault therein.  Count III alleged that defendant committed criminal sexual assault (720 ILCS 5/12--13(a)(2) (West 1996)) when he knowingly committed an act of sexual penetration with W.S. by placing his finger in her vagina.

W.S.'s testimony at trial included the following.  At about 11:45 p.m. on June 27, 1996, W.S. returned home from work.  She was 31 years old and lived by herself in a duplex ranch in Naperville.  After she got home, W.S. had a glass of wine and watched television.  She went to bed around 1 a.m.

Because it was a warm night, W.S. opened her bedroom window.  There was a screen on the window.  The blinds were drawn.  W.S.’s bed was located near the window.   She was wearing a white cotton nightgown that extended to mid-thigh.  She was not wearing underclothes.  A quilt or duvet covered her.  A nightlight that was located below the window was on.  W.S. soon fell into a sound sleep.

W.S. was asked to tell the jury the next thing she awoke to. She responded "I was laying [
sic] 
on my side and I was asleep, and I felt something that was in my vagina."  As she awakened, W.S. realized that "there was something penetrating inside of my vagina, and then it went from there to caressing the outside."

W.S. then rolled over and observed a man in her bedroom.  She did not know the man.  The man was stroking his penis.  At that point, the man was not touching W.S.’s vagina.  W.S. screamed and the man ran out of her house.  At trial, W.S. identified defendant as the man who was in her bedroom.

It was subsequently determined that the screen had been removed from W.S.’s bedroom window and that W.S.'s wallet was missing from her dresser.  W.S. told the investigating police officers that someone had inserted fingers into her vagina. 

At trial, the State's Attorney asked W.S. "is there any question in your mind that [defendant] in fact placed his finger in your vagina that early morning?"  W.S. responded "No, there is no question in my mind."

The State called Brian Cunningham to testify at trial.  Cunningham testified that he is a detective with the Naperville police department and that he participated in the investigation of the incident in W.S.'s home.  Based on a match of latent fingerprints found in W.S.’s home with defendant’s fingerprints, Cunningham arrested defendant.  After arresting defendant, Cunningham conducted an interview with defendant that occurred in several segments over a period of more than three hours.

In the initial part of the interview, defendant told Cunningham that he lived in an apartment complex near W.S.’s home.  Defendant also told Cunningham that on the night of the incident he had trouble sleeping so he went for a walk around the lake behind W.S.’s home.  Defendant had seen W.S. on prior occasions and found her to be attractive.  As defendant approached W.S.’s home, he had "an uncontrollable urge to look closer."

Defendant also told Cunningham that he then looked through W.S.’s bedroom window and saw her lying naked on her bed.  
Defendant got sexually aroused and started playing with himself.  Defendant felt an urge to get a closer look at W.S.  Defendant  removed the screen from W.S.’s bedroom window and climbed through the window into her bedroom.

After entering W.S.'s bedroom, defendant first walked through the house to make sure nobody else was home.  Defendant then returned to W.S.’s bedroom, stood at the foot of her bed, and masturbated.  When W.S. woke up and screamed, defendant ran from the house.  Defendant initially denied touching W.S. and denied removing any items from her home.

Defendant later admitted that he took W.S.'s wallet from her home.  Defendant also later told Cunningham that after he entered W.S.’s bedroom through the window he opened her front door and propped open the front screen door.  He did this so he could run out the front door in case he had to run from the home.  Defendant also told Cunningham that after he returned to W.S.’s bedroom he partially removed his shorts and exposed his penis while masturbating.

Cunningham then focused his questions on whether defendant touched W.S.  The following colloquy between the State’s Attorney and Cunningham ensued.

"Q.  Did you continue to ask [defendant] if he touched [W.S.]?

A.  Yes, I did.

Q.  And eventually at some point did he give a different response?

Yes, he did.

What response did he give?

A.  He indicated that initially he said I may have touched her, and then he indicated that he did touch her on the leg, specifically her thigh.  He indicated this touch occurred while he was trying to remove a blanket, he wanted to get a better look at her.

Q.  Did he tell you anything more specifically about that touch?

A.  Yes, he did.

Q.  What did he say?

A.  He indicated that her skin was soft, and when he touched her, that touch, the feeling of her skin, the combination with watching her for that period of time made him come.

Q.  Again, did you ask him about whether he touched her vaginal area?

A.  Yes, I did.

Q.  And what did he say?

A.  He indicated no, he only touched her on the leg.

Q.  At any point did he make any other statements with regard to your questioning him about whether he touched her vaginal area?

A.  No."

Cunningham also testified that defendant gave him two written statements.  In these written statements, defendant admitted that he had been at W.S.’s bedroom window on three prior occasions.

At defendant’s request, the trial court gave the jury instructions for criminal trespass to a residence as lesser included offenses of counts I and II, the residential burglary counts.  The jury found defendant guilty of the lesser included offenses of criminal trespass to a residence as to counts I and II.

Defendant also requested and tendered jury instructions on battery, touching of an insulting or provoking nature, as a lesser included offense of criminal sexual assault.  The trial court refused to give the jury the battery instructions.

The jury found defendant guilty of criminal sexual assault.  The trial court entered judgment on the verdict.  After the trial court denied defendant’s motion for a new trial, defendant filed a timely notice of appeal.

On appeal, defendant contends that the trial court erred when it refused to instruct the jury on the offense of battery, touching of an insulting or provoking nature, as a lesser included offense of criminal sexual assault.  Defendant argues that he was entitled to the lesser included offense instructions for battery because the instructions he tendered satisfied the two-part test that our supreme court established to determine whether lesser included offense instructions should be given.  Defendant states that the two-part test consists of (1) determining whether the charging instrument describes the lesser included offense and (2) determining whether the evidence would permit a jury rationally to find a defendant guilty of the lesser included offense but acquit the defendant of the greater offense.

The State agrees that the correct method to determine whether defendant was entitled to the lesser included offense instructions is to apply the two-part test.  However, the State disagrees with defendant as to whether defendant's proffered instructions satisfied the two-part test in this case.

In 
People v. Hamilton, 
179 Ill. 2d 319 (1997), our supreme court  set out the principles governing the giving of lesser included offense instructions.  The court stated:

"Generally, a defendant may not be convicted of an offense for which he has not been charged.
 
[Citation.] However, in an appropriate case, a defendant is entitled to have the jury instructed on a less serious offense if that offense is included in the charged offense. 
 
[Citation.]  The purpose of an instruction on a lesser offense is to provide 'an important third option to a jury which, believing that the defendant is guilty of something but uncertain whether the charged offense has been proved, might otherwise convict rather than acquit the defendant of the greater offense.' 
[Citations.]

An included offense is an offense which '[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged.'  720 ILCS 5/2--9(a) (West 1994).  In determining whether a particular offense is included in a charged offense, this court has held that the proper approach is to examine both the charging instrument and the evidence adduced at trial.
 
[Citation.]  Under this charging instrument approach, an offense is identified as a lesser included offense if it is described by the charging instrument. [Citations.]

Once a lesser included offense is identified, however, it does not automatically follow that the jury must be instructed on the lesser offense. 
[Citation.]  
A defendant is entitled to a lesser included offense instruction only if an examination of the evidence reveals that it would permit a jury to rationally find the defendant guilty of the lesser offense yet acquit the defendant of the greater offense. [Citations.]" 
Hamilton, 
179 Ill. 2d at 323-24. 

Applying these principles to this case, we will first determine whether the charging instrument described battery as an included offense of criminal sexual assault such that the battery could be proved by the same facts or a less culpable mental state.  See 
Hamilton, 
179 Ill. 2d at 324.  Whether a charged offense encompasses a lesser included offense is a question of law that we review 
de novo.  Landwer, 
166 Ill. 2d at 486.

In making this determination, we bear in mind that under the charging instrument approach it is not necessary for the charging instrument expressly to allege all the elements of the lesser offense and that the lesser offense need not be a theoretical or practical necessity of the greater crime.  
Hamilton, 
179 Ill. 2d at 325.  Rather, it is sufficient if the language of the charging instrument implicitly contains the elements of the lesser included offense and if the indictment as a whole sets forth the main outline or broad foundation of the lesser included offense.  
People v. DeWeese, 
298 Ill. App. 3d 4, 10 (1998). 

Count III of the indictment in this case alleged that defendant  "[c]ommitted the offense of criminal sexual assault in that the said defendant knowing that [W.S.] was unable to give knowing consent, knowingly committed an act of sexual penetration with [W.S.], in that the defendant placed his finger in the vagina of [W.S.] in violation of 720 ILCS 5/12-13(a)(2)."  The offense of battery, touching of an insulting or provoking nature, is committed when a person "intentionally or knowingly without legal justification and by any means *** makes physical contact of an insulting or provoking nature with an individual."  720 ILCS 5/12--

3(a)(2) (West 1996).

Our examination of the charging document and the evidence adduced at trial lead us to conclude that the offense of battery as described by the defendant is not described by the charging document of criminal sexual assault and that, therefore, the court did not err in refusing to give the lesser included offense instruction for battery.  The indictment charges defendant with penetrating W.S.’s vagina with his finger.  Defendant disputed that any touching of the vagina occurred; the defendant claims a touching of W.S.’s thigh was the factual basis that a battery occurred.  Clearly, the indictment does not describe a battery premised on an insulting or provoking touching of the thigh.  Defendant directs us to the case of 
People v. Margiolas, 
117 Ill. App. 3d 363 (1983), which found that battery of an insulting or provoking nature is inherent in every case of rape.  However, in 
Margiolas, 
the insulting or provoking touching was the same as the action charged in the rape indictment: sexual intercourse, the insertion of the defendant’s penis into the victim’s vagina.  Here, the proposed insulting touch was a different act of touching a different part of the body.  It could not be proved by the same or less than all the facts or a less culpable mental state than that required to establish the commission of criminal sexual assault.  See 720 ILCS 5/2--9(a) (West 1996).  To accept defendant’s argument would be to accept that a charge of criminal sexual assault includes an insulting or provoking touch 
anywhere 
on the body, despite the limited description of the charge.  This is an absurdity.  Touching the thigh is no more contemplated by the indictment in this case than is tickling the bottom of the foot or punching the back of the head.  If defendant touched W.S. on the thigh, he could have been charged with a 
separate 
offense of battery and could have been convicted of both criminal sexual assault for inserting his finger into W.S.’s vagina and battery for touching her thigh.  The indictment does not describe the battery that defendant proposes; therefore, the court did not err in refusing to give the battery instruction to the jury.

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

COLWELL and RAPP, JJ., concur.