Filed 12/28/07          NO. 4-06-0822

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )   Appeal from
            Plaintiff-Appellee,        )   Circuit Court of
            v.                         )   Sangamon County
PAUL W. SANDEFUR,                      )   No. 04CF1064
            Defendant-Appellant.       )
                                       )   Honorable
                                       )   Leo J. Zappa, Jr.,
                                       )   Judge Presiding.
_____

            JUSTICE TURNER delivered the opinion of the court:

            In May 2006, a jury found defendant, Paul W. Sandefur,

guilty of two counts of aggravated criminal sexual abuse and one

count of predatory criminal sexual assault.  In September 2006,

the trial court sentenced defendant to consecutive terms of nine

and four years in prison, respectively, for the predatory crimi-

nal sexual assault of O.W. and the aggravated criminal sexual

abuse of L.W.

            On appeal, defendant argues the trial court erred in

(1) refusing the defendant's jury instruction on the lesser-

included offense of battery and (2) admitting hearsay statements

of the minors.  We affirm.

                          I. BACKGROUND

            In October 2004, a grand jury indicted defendant on two

counts of predatory criminal sexual assault (720 ILCS 5/12-

14.1(a)(1) (West 2004)), alleging defendant, over the age of 17,

committed an act of sexual penetration with O.W., under the age

of 13 at the time of the act, by placing his finger in her sex

organ.  The second count alleged defendant committed the same offense by placing his penis in contact with the sex organ or anus of L.W.  The grand jury also indicted defendant on two counts of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004)), alleging he committed an act of sexual conduct with O.W. when he knowingly touched her body for the purpose of his own sexual arousal.  The second count alleged defendant committed the same offense when he knowingly touched the body of L.W. for the purpose of his own sexual arousal. Defendant pleaded not guilty.

A. Section 115-10 Hearing

In September 2005, the State filed a notice of intent to offer hearsay statements of L.W. and O.W. pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/115-10 (West 2004)).  Thereafter, the trial court conducted a hearing on the State's motion.

Somiko Granderson testified she is the mother of L.W. and O.W.  On or around June 17, 2002, Granderson was staying with her mother, Mae Ella Bolden.  At that time, Bolden was seeing defendant; O.W. was seven years old and L.W. was six.  They would sleep in one bedroom, while Bolden and defendant slept in Bolden's bedroom.  Granderson slept in the living room.  On June 17, 2002, Granderson returned home from a night out and found L.W. asleep in bed with defendant.  When Granderson removed the cover, she "noticed that [L.W.'s] underwears [sic] were off." She stated L.W.'s nightgown was lifted up above her waist.  When

- 2 -

Granderson asked L.W. where her underpants were, L.W. said, "'Paw-paw hid them up under the pillow.'" L.W. referred to defendant as Paw-paw. Shortly thereafter, Granderson asked L.W. if defendant touched her in any type of way. L.W. stated, "'He touched my butt.'" Granderson then took her to the hospital.

On cross-examination, Granderson testified it was not unusual for L.W. to climb into bed with Bolden and defendant. She stated L.W. had a habit of wetting herself and would then hide her underwear. Granderson stated neither the bed nor L.W. was wet at the time. She also stated she looked under defendant's pillow but did not find any underwear. Granderson stated her mother found the underwear in her dirty clothes.

Tracy Pearson, a forensic interviewer with the Sangamon County Child Advocacy Center, testified she interviewed L.W. on June 28, 2002. The interview was taped, but the tape was destroyed when the case was ruled unfounded. Pearson asked L.W. if anyone touched her private, referring to her vagina, and L.W. said no. When Pearson asked her if anyone ever touched her butt, L.W. responded "'Paw-paw.'" L.W. stated it occurred at her grandma's house and the touching occurred under her clothes. Pearson then asked L.W. if she could tell her what defendant did, but L.W. responded, "'I don't know.'" When asked whether it hurt to be touched, L.W. nodded her head yes.

Pearson also interviewed L.W. and O.W. on May 17, 2004. L.W. told Pearson she did not know the reason for the interview. When Pearson asked her whether anyone ever touched her private

part in back, L.W. stated her "Grandpa" Paul touched her at her grandma's house. At one point, Pearson asked if L.W. could tell her exactly what Grandpa Paul did and L.W. stated, "I forgot." After further questioning, she stated she was wearing a nightshirt and she was lying down. When asked what Grandpa Paul touched her with, L.W. stated "his stuff," which she stated was his front part. L.W. stated if felt "nasty." L.W. stated she did not see his "stuff." She also stated defendant's clothes were off when he touched her and he took off her underwear.

O.W. told Pearson her stepgrandpa Paul "Andaver" touched her at her grandma's house when she was seven. When she was sleeping on the couch in the living room, defendant touched her inside her private part, her "coochie," with his finger under her clothes. She tried to push him away. She stated it later was hard for her "to pee." She told her grandma the night of the incident, but her grandma did not believe her. She told her mother after learning about touching private parts at a school program.

The trial court allowed the statements under section 115-10. The court considered the time, content, and circumstances of the children's statements and found the statements provided sufficient safeguards of reliability to allow admission into evidence under section 115-10.

### B. Jury Trial

In May 2006, defendant's jury trial commenced. Mae Ella Bolden testified Granderson came home and asked where L.W.

was because she was not in her bed.  Bolden found L.W. at the foot of her bed and defendant at the head of the bed.  Granderson asked L.W. where her underwear was, and L.W. stated "'Paw-paw told me to take them off.'"  Bolden later found L.W.'s underwear behind the dryer.

Somiko Granderson testified Bolden watched L.W. as she and her boyfriend went out the evening of June 16, 2002.  Upon returning, she found L.W. lying on Bolden's bed next to defendant.  Granderson noticed L.W.'s "gown was up" and "she didn't have any underwears [sic] on."  She asked L.W. where her underwear was, and L.W. stated, "'Paw-paw put them under the pillow.'"  She took L.W. to the bathroom and asked her if defendant touched her.  L.W. stated he touched her buttocks.

On cross-examination, Granderson stated L.W. had a problem with wetting the bed.  L.W. also had a habit of hiding her underwear when she wet the bed.  This incident was the first time she ever found L.W. without underwear on because L.W. would always clean herself and put on new underwear.

O.W. testified she was 11 years old.  When she was seven, she lived with her mom, her siblings, Bolden, and defendant.  On one occasion, she was lying on the couch in the living room when defendant came in and touched her on her "private parts and stuff."  O.W. stated defendant put his finger in her "coochie" and it "really hurt."  She stated it "kept hurting for a while" when she had used the bathroom.  She tried telling her grandma at a later time but "she didn't understand."

- 5 -

She then saw a movie at school about what to do when inappropriately touched by someone and told a grown-up about what happened. O.W. stated she did not tell her mom or her grandma again about what happened because she was scared of defendant.

L.W. testified she was 10 years old. When she was six years old, she was in bed in her grandma's bedroom when defendant touched her "bottom" with "his private part." She did not remember what it felt like.

Dr. Victoria Nichols-Johnson testified she specializes in obstetrics and gynecology and performs medical examinations of children to assess sexual abuse. She stated she conducted an examination of L.W. in June 2004. L.W. stated her grandpa had touched her back private area with "his stuff." L.W. indicated it hurt at the time it happened but it did not hurt afterward when she went to the bathroom. A physical examination did not reveal anything out of the ordinary. Dr. Nichols-Johnson stated she expected a normal exam because L.W. did not give any indication that she was in pain afterward or observed any bleeding.

Dr. Nichols-Johnson also examined O.W. in June 2004. O.W. stated her stepgrandpa had touched her in her private area with his finger. She stated it hurt and later noticed "a dot of blood on the tissue afterwards when she went to the bathroom." A medical examination revealed "some defects in the hymenal ring that appeared to be traumatic in origin," that being caused by "some external force." Dr. Nichols-Johnson stated the injury could be caused by an adult finger being inserted into the

child's genitals.  She also stated the examination revealed a "bump" on the hymenal ring that could have been caused by the healing of the initial injury.  Dr. Nichols-Johnson was of the opinion that O.W. had been sexually assaulted.

Herbie McBride, a convicted felon, testified he resided at Graham Correctional Center.  While in the Sangamon County jail, McBride had a conversation with defendant in September 2005.  Defendant told him O.W. had "a bump" down by her leg and he was "checking it."  He said he rubbed on the bump to make sure it was not a major sore or infection.

Laundra Haynes testified he was housed at the Sangamon County jail at the same time as defendant and McBride.  Haynes overheard a conversation between defendant and McBride, wherein defendant stated the "little girl" had a rash near her vagina and he was trying to see what it was by rubbing on it.  On cross-examination, Haynes testified he had pending cases for trafficking in marijuana and unlawful use of a weapon and faced 8 to 30 years in prison.

Tracy Pearson testified she interviewed L.W. in June 2002.  The interview was taped but the tape was later destroyed because the Department of Children and Family Services case was unfounded.  Pearson found L.W. reluctant to answer the questions. When asked whether someone touched her butt, L.W. stated "'Paw-paw.'"  When asked how "Paw-paw touched her butt," L.W. stated she did not know.  In May 2004, Pearson conducted taped interviews of both L.W. and O.W., and they were played for the

jury.

Dr. Maria Spivey testified for the defense as an expert in pediatrics. She reviewed the reports authored by Dr. Nichols-Johnson in connection with this case. As to L.W., Dr. Spivey was unable to draw a conclusion from the information. As to O.W., she found the history provided by O.W. was consistent with sexual assault. Dr. Spivey did not agree with Dr. Nichols-Johnson's opinion that the "mound" that extended into O.W.'s vagina was evidence of an intrusion because that "bump of tissue" is normal in newborn infants and children who have not been abused. Dr. Spivey indicated nothing in the photographs showed evidence of scar tissue.

Bill Clutter, a licensed private investigator, testified he interviewed Mae Ella Bolden in May 2005. Bolden told him L.W. would periodically wet her bed and her mother would "whip her at times." L.W. would oftentimes hide her underwear "to avoid the beatings." On Father's Day in June 2002, Bolden found L.W. sleeping at the foot of Bolden's bed on top of the covers. After Granderson took L.W. to the hospital, Bolden found L.W.'s underwear, which smelled like urine, behind the washing machine. Clutter also interviewed Bolden with respect to O.W. Bolden stated O.W. never brought to her attention any allegation of touching by defendant. Bolden also questioned O.W.'s truthfulness.

Defendant exercised his constitutional right not to testify. See U.S. Const., amend. V. Following closing

arguments, the jury found defendant guilty of aggravated criminal sexual abuse as to L.W., aggravated criminal sexual abuse as to O.W., and predatory criminal sexual assault as to O.W. The jury found defendant not guilty of predatory criminal sexual assault as to L.W.

In June 2006, defendant filed a motion for a new trial, alleging, inter alia, the trial court erred in allowing hearsay statements of the victims and in denying defendant's tendered jury instructions. In September 2006, the court denied the motion. Thereafter, the court sentenced defendant to nine years in prison for the offense of predatory criminal sexual assault as to O.W. and four years for the offense of aggravated criminal sexual abuse as to L.W. The court ordered the sentences to run consecutively. Also, the conviction for aggravated criminal sexual abuse as to O.W. merged into the conviction for predatory criminal sexual assault. This appeal followed.

## II. ANALYSIS

### A. Lesser-Included-Offense Instruction

Defendant argues the trial court erred in refusing to tender defendant's jury instruction on the lesser-included offense of battery. We disagree.

> "A defendant generally may not be convicted
> of an offense for which the defendant has not
> been charged. However, in an appropriate
> case, the defendant is entitled to have the
> jury instructed on less serious offenses that

- 9 -

are included in the charged offense. Such a practice provides an important third option to a jury. If a jury believes that a defendant is guilty of something, but uncertain whether the charged offense has been proved, the jury might convict the defendant of the lesser offense rather than convict or acquit the defendant of the greater offense." People v. Ceja, 204 Ill. 2d 332, 359, 789 N.E.2d 1228, 1246 (2003).

In Illinois, courts determine whether an offense is a lesser-included offense using the two-tiered charging-instrument approach. Ceja, 204 Ill. 2d at 360, 789 N.E.2d at 1246. The first tier requires the reviewing court to determine whether the charging instrument describes the lesser offense. Ceja, 204 Ill. 2d at 360, 789 N.E.2d at 1246. "At a minimum, the instrument charging the greater offense must contain a broad foundation or main outline of the lesser offense." Ceja, 204 Ill. 2d at 360, 789 N.E.2d at 1246.

If the charging instrument describes the lesser offense, the court moves to the second tier and determines whether the evidence adduced at trial rationally supports the conviction on the lesser-included offense. Ceja, 204 Ill. 2d at 360, 789 N.E.2d at 1247. "A court must examine the evidence presented and determine whether the evidence would permit a jury to rationally find the defendant guilty of the lesser-included

offense, but acquit the defendant of the greater offense."  Ceja,
204 Ill. 2d at 360, 789 N.E.2d at 1247.

### 1. Predatory Criminal Sexual Assault

In the case sub judice, the indictment alleged
defendant committed the offense of predatory criminal sexual
assault in that he, over the age of 17, committed an act of
sexual penetration with O.W., under the age of 13 at the time the
act was committed, by placing his finger in her sex organ.  See
720 ILCS 5/12-14.1(a)(1) (West 2004).  "Sexual penetration" is
defined as "any contact, however slight, between the sex organ or
anus of one person by an object, the sex organ, mouth or anus of
another person."  720 ILCS 5/12-12(f) (West 2004).  A person
commits the offense of battery if he "intentionally or knowingly
without legal justification and by any means *** makes physical
contact of an insulting or provoking nature with an individual."
720 ILCS 5/12-3(a) (West 2004).

In People v. Poulos, 303 Ill. App. 3d 818, 819-20, 709
N.E.2d 303, 304 (1999), the defendant was charged with two counts
of residential burglary and one count of criminal sexual assault.
The evidence showed the defendant entered the residence of the
victim, who felt "'something penetrating inside of [her]
vagina.'"  Poulos, 303 Ill. App. 3d at 820, 709 N.E.2d at 304.
She awoke to find the defendant stroking his penis.  Poulos, 303
Ill. App. 3d at 820, 709 N.E.2d at 304.  A police detective
testified the defendant initially denied touching the victim but
later stated he touched her thigh, not her vaginal area.  Poulos,

- 11 -

303 Ill. App. 3d at 821-22, 709 N.E.2d at 305.

The defendant sought a jury instruction on the offense of battery as a lesser-included offense of criminal sexual assault, but the trial court refused. Poulos, 303 Ill. App. 3d at 822, 709 N.E.2d at 306. A jury found him guilty of criminal trespass to a residence and criminal sexual assault. Poulos, 303 Ill. App. 3d at 822, 709 N.E.2d at 306.

On appeal, the defendant argued the trial court erred in refusing to instruct the jury on the offense of battery as a lesser-included offense of criminal sexual assault. Poulos, 303 Ill. App. 3d at 822, 709 N.E.2d at 306. The Second District disagreed, concluding an examination of the charging instrument and evidence at trial indicated the offense of battery as described by the defendant was not described by the charging document of criminal sexual assault. Poulos, 303 Ill. App. 3d at 824, 709 N.E.2d at 307.

> "The indictment charges defendant with penetrating W.S.'s vagina with his finger. Defendant disputed that any touching of the vagina occurred; the defendant claims a touching of W.S.'s thigh was the factual basis that a battery occurred. Clearly, the indictment does not describe a battery premised on an insulting or provoking touching of the thigh. *** Here, the proposed insulting touch was a different act of

touching a different part of the body.  It
could not be proved by the same or less than
all the facts or a less culpable mental state
than that required to establish the
commission of criminal sexual assault.
[Citation.]  To accept defendant's argument
would be to accept that a charge of criminal
sexual assault includes an insulting or
provoking touch anywhere on the body, despite
the limited description of the charge.  This
is an absurdity.  Touching the thigh is no
more contemplated by the indictment in this
case than is tickling the bottom of the foot
or punching the back of the head.  If
defendant touched W.S. on the thigh, he could
have been charged with a separate offense of
battery and could have been convicted of both
criminal sexual assault for inserting his
finger into W.S.'s vagina and battery for
touching her thigh.  The indictment does not
describe the battery that defendant proposes;
therefore, the court did not err in refusing
to give the battery instruction to the jury."
(Emphasis in original.)  Poulos, 303 Ill.
App. 3d at 824, 709 N.E.2d at 307.

In this case, defendant contends his claimed battery,

that he knowingly and by any means made physical contact of an insulting or provoking nature with O.W.'s leg, is a lesser-included offense of the charged predatory criminal sexual assault of O.W. Defendant cites testimony from McBride, who heard defendant say he was rubbing on O.W.'s leg.

Here, the indictment does not describe a battery premised on an insulting or provoking touching of O.W.'s leg. As in Poulos, if defendant touched O.W. on the leg, he could have been charged with the separate offense of battery and could have been convicted of both predatory criminal sexual assault for placing his finger in O.W.'s sex organ and battery for touching her leg. As the indictment does not describe the battery that defendant proposes, the trial court did not err in refusing to give the battery instruction as a lesser-included offense of predatory criminal sexual assault.

### 2. Aggravated Criminal Sexual Abuse

In this case, the indictments alleged defendant, over the age of 17, committed an act of sexual conduct with O.W. and L.W., both under the age of 13 when the acts were committed, in that he knowingly touched the bodies of O.W. and L.W. for the purpose of his own sexual arousal. See 720 ILCS 5/12-16(c)(1)(i) (West 2004). "Sexual conduct" has been defined as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus[,] or breast of the victim or the accused, or any part of the body of a child under 13 years of age *** for the purpose of

- 14 -

sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12-12(e) (West 2004).

Defendant argues the jury could have found he touched the buttocks of L.W. without finding his purpose was for his own sexual arousal. Although defendant correctly points out L.W. testified at trial he touched her "butt" and she told others outside of trial the same thing, defendant fails to mention he used his penis to touch her. Dr. Nichols-Johnson testified L.W. told her defendant had touched her back private area with "his stuff." At trial, L.W. testified defendant touched her bottom with "his private part." When asked at trial to mark the place she was referring to as defendant's private area on a drawing of a naked adult male, L.W. drew a line near the penis.

Here, the evidence would not permit a rational jury to find defendant guilty of battery and acquit him of the aggravated criminal sexual abuse of L.W. The sexual arousal a defendant seeks by touching a young girl's buttocks with his penis so outweighs the insulting or provoking nature of the touch that it can constitute nothing less than sexual conduct.

Defendant argues the facts presented here are similar to those in People v. Reynolds, 359 Ill. App. 3d 207, 832 N.E.2d 512 (2005), and required instructing the jury on the lesser-included offense of battery. There, the defendant used his hand to rub the victim's back to within an inch of her buttocks. Reynolds, 359 Ill. App. 3d at 209, 832 N.E.2d at 515. The trial court found the State failed to prove the defendant's touching

was for the purpose of his sexual arousal and found him guilty of the lesser-included offense of battery. Reynolds, 359 Ill. App. 3d at 211, 832 N.E.2d at 517.

Here, defendant used his penis to touch defendant's buttocks. Given the evidence at trial, the jury could only conclude that, if he touched L.W.'s buttocks with his penis, he did so for the purpose of his own sexual arousal. Therefore, the jury instruction on the offense of battery was not warranted, and the trial court did not err in refusing to give the instruction.

Defendant also claims the jury could have convicted defendant of battery as to O.W., thereby requiring an instruction on the lesser-included offense. However, "there is no final judgment in a criminal case until the imposition of a sentence, and, in the absence of a final judgment, an appeal cannot be entertained." People v. Johnson, 318 Ill. App. 3d 281, 291, 743 N.E.2d 150, 158 (2000); see also People v. Baldwin, 199 Ill. 2d 1, 5, 764 N.E.2d 1126, 1128 (2002) ("Absent a sentence, a conviction is not a final and appealable judgment").

Here, the trial court merged defendant's conviction for aggravated criminal sexual abuse as to O.W. into his conviction for predatory criminal sexual assault. The court then sentenced defendant on the convictions for predatory criminal sexual assault and aggravated criminal sexual abuse as to L.W. Since no judgment of conviction was entered or sentence imposed on the aggravated-criminal-sexual-abuse offense as to O.W., defendant is barred from challenging any aspect of that charge on appeal.

B. Hearsay Statements

Defendant argues the trial court erred when it admitted out-of-court hearsay statements of the minors pursuant to section 115-10. We disagree.

In prosecuting a defendant for a physical or sexual act against a child under the age of 13, certain evidence shall be admitted as an exception to the hearsay rule pursuant to section 115-10(b) of the Procedure Code under the following circumstances:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115-10(b) (West 2004).

At the section 115-10 hearing, the trial court must consider the totality of the circumstances surrounding the hearsay statements and should consider the following factors in

- 17 -

making a reliability determination: "(1) the child's spontaneity and consistent repetition of the incident, (2) the child's mental state, (3) the child's use of terminology unexpected of a child of similar age, and (4) the child's lack of motive to fabricate." People v. Sharp, 355 Ill. App. 3d 786, 796, 825 N.E.2d 706, 714 (2005), citing People v. Cookson, 335 Ill. App. 3d 786, 791, 780 N.E.2d 807, 811 (2002).

"The State bears the burden of proving that the statements were reliable and not the result of adult prompting or manipulation." Cookson, 335 Ill. App. 3d at 791, 780 N.E.2d at 811. A reviewing court will not overturn a trial court's evidentiary ruling pursuant to section 115-10 absent an abuse of discretion. People v. Stechly, 225 Ill. 2d 246, 312-13, 870 N.E.2d 333, 372 (2007); Sharp, 355 Ill. App. 3d at 797, 825 N.E.2d at 714. "An abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view." Sharp, 355 Ill. App. 3d at 797, 825 N.E.2d at 714.

Defendant argues the time, content, and circumstances of the following statements did not provide sufficient safeguards of reliability: (1) L.W.'s statement to her mother following the June 17, 2002, incident; (2) L.W.'s statement to Pearson on June 28, 2002; (3) L.W.'s statement to Pearson on May 17, 2004; and (4) O.W.'s statement to Pearson on May 17, 2004.

### 1. L.W.'s June 17, 2002, Statements

Granderson testified she returned home and found L.W.

sleeping in Bolden's bed while defendant was watching television. After lifting the covers off L.W. to carry her to her own bed, Granderson saw L.W.'s underpants were off and her nightgown was up above her waist. Granderson asked L.W. where her underpants were, and L.W. stated "'Paw-paw hid them up under the pillow.'" Granderson took L.W. to the bathroom and again asked, "Where's your underwear?" L.W. responded, "'Paw-paw got them, they're up under his pillow.'" Granderson then asked her if defendant touched her in any way. L.W. stated, "'He touched my behind.'" Granderson went on to testify L.W. pointed to her butt and said, "'He touched my butt.'"

L.W.'s statements to her mother were made within hours of the incident with defendant. She also used terminology that could be expected of a six-year-old child. Further, her statements were made in response to her mother's reasonable questions concerning her underwear. Granderson's questions were not designed to evoke an incriminating response but were general in nature in terms of where L.W.'s underwear was located and whether defendant touched her in any type of way. Defendant argues Granderson's recollection of the statements "were tainted by alcohol." However, this argument goes to the evidentiary weight of the statements and does not address admissibility under section 115-10. We find no abuse of discretion.

## 2. L.W.'s June 28, 2002, Statements

Pearson interviewed L.W. at the Child Advocacy Center less than two weeks after the incident. The interview was taped,

- 19 -

but the tape was later destroyed when the case was determined to be unfounded.  Pearson stated L.W. was six years old and "seemed very shy."  With children that young, Pearson stated she uses anatomical drawings of the front and back view of a child.  She asked L.W. to identify all the body parts and asked her to point out the "private parts on the drawing."  She named them "'private and butt'" and later pointed and called them "'private and private.'"

When Pearson asked L.W. if anyone had touched her private area, referring to her vagina, L.W. said no.  When she asked if anyone ever touched her butt, L.W. nodded her head yes.  Pearson asked who, and L.W. said "'Paw-paw.'"  L.W. then told her it occurred at her grandma's house on the big bed in Bolden's room.  Further, she had her clothes on, but the touching occurred under her clothes.  After Pearson left the room to talk with investigators, she returned and asked L.W. if she could tell her what defendant did.  L.W. said, "'I don't know.'"  When asked if it hurt to be touched, L.W. nodded her head yes.

Defendant argues L.W. was confused by naming both body parts her private area and then stating defendant did not touch her private but touched her butt.  However, we find it natural for a six-year-old child to label her vaginal and anal area as her "privates" and refer to her buttocks as "butt."  Although L.W. could not tell Pearson exactly what defendant did, it is reasonable to conclude she was unable to articulate what happened or did not see what defendant was "exactly" doing to her from

behind.

We note that a taped interview "provides a better means for assuring that there was no adult prompting or manipulation involved, and the failure to do so may be considered a negative factor when considering reliability." Cookson, 335 Ill. App. 3d at 792, 780 N.E.2d at 811. The questions asked by Pearson did not suggest an affirmative answer to the issue of touching or who may have done the touching. L.W. answered no when asked if anyone touched her vaginal area and yes when asked about her buttocks. When asked who touched her, L.W. referred to defendant. We find no abuse of discretion.

### 3. L.W.'s May 17, 2004, Statements

On May 17, 2004, Pearson again conducted an interview with L.W., which was recorded and shown to the trial court. When Pearson asked L.W. whether anyone ever touched her private part in back, L.W. responded her "Grandpa" Paul touched her at her grandma's house. When asked what defendant touched her with, L.W. stated "his stuff." During the interview, L.W. oftentimes responded "I don't know" or "I don't remember." Further, long pauses would sometimes occur after Pearson asked a question, requiring Pearson to ask the question again. Defendant argues L.W.'s statements were inconsistent and not spontaneous. However, it is clearly evident that L.W. had difficulties talking about the incident. Those difficulties are understandable considering her age, educational level, and the emotional toll required to talk about the incident. L.W.'s statements on May

- 21 -

17, 2004, do not differ substantively from what she previously told Pearson or her mother. Her responses to Pearson's questions, as evidenced by the taped interview, indicate L.W. was not prompted or manipulated into falsely incriminating defendant. Instead, her statements were consistent with her prior statements that defendant touched her buttocks. We find no abuse of discretion.

### 4. O.W.'s May 17, 2004, Statements

On May 17, 2004, Pearson conducted an interview with O.W., which was recorded and shown to the trial court. When Pearson asked O.W. who touched her, she responded her stepgrandpa. O.W. stated she was sleeping on the couch in the living room of her grandma's house when defendant touched her private part with his finger. She stated it "really hurt" and it "kept hurting for a while" when she had to use the bathroom.

Defendant argues O.W.'s statements were not reliable because she had trouble spelling her middle name, called defendant "Paul Andaver," did not state when the incident occurred, and did not tell anyone, besides Bolden, until she learned about child abuse at school. However, the taped interview indicates O.W. was an articulate and talkative young girl who provided explanations to the questions asked. She did not exaggerate defendant's conduct or attempt to add other acts of misconduct. For example, she stated defendant did not touch her anywhere else on her body and that he had not shown his private parts to her or asked her to touch his private parts.

- 22 -

Although O.W. did not state the date of the incident, she did indicate it happened at night, in the living room, on the couch, when she was seven years old. While she did not disclose the incident to anyone other than her grandma until she learned about inappropriate touching at school, "[d]elays in reporting sexual acts do not automatically render a child victim's statements inadmissible." Cookson, 335 Ill. App. 3d at 792, 780 N.E.2d at 811. Further, considering her grandma's response and the likelihood O.W. did not understand the inappropriate nature of the touching, her delay in reporting the incident was understandable.

The taped interview indicates O.W. was not prompted or manipulated into falsifying the incident and incriminating defendant. The interview shows the time, content, and circumstances of the making of O.W.'s statements to Pearson provided sufficient safeguards of reliability to be admissible under section 115-10. We find no abuse of discretion.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

APPLETON, P.J., and STEIGMANN, J., concur.

- 23 -