2020 IL App (2d) 180591-U
No. 2-18-0591
Order filed November 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-DT-1503 |
| DARWIN M. BEALS, | ) ) ) | Honorable Anthony V. Coco, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Declining to decide on appeal whether the trial court erred in refusing to allow defendant to make an extrapolation argument that his blood alcohol concentration (BAC) was lower than 0.08 while he was driving; defendant was found guilty of both driving under the influence of alcohol (DUI) and driving with a BAC of 0.08 or more, but only the guilty finding on the DUI charge was at issue on appeal; any error was harmless, because the finding of guilty on the DUI charge was supported by sufficient evidence apart from defendant's BAC, *e.g.*, his erratic driving and poor performance on field sobriety tests.

¶ 2    After a jury trial, defendant, Darwin M. Beals, was found guilty of driving with a breath alcohol content (BAC) of 0.08 or more (625 ILCS 5/11-501(a)(1) (West 2016)) (DBAC) and driving under the influence of alcohol (*id.* § (a)(2)) (DUI).  The trial court merged the two

verdicts, entered a judgment on the DUI, and imposed one year of supervision. On appeal, defendant contends that the court denied him a fair trial by prohibiting him from arguing to the jury that the result of a preliminary breath alcohol test (PBT) was probative of his BAC when he was driving. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     Defendant took the PBT about 10 minutes after he was stopped. He was tested at the police station about 46 minutes after the PBT. Before trial, he moved to bar the State from introducing the PBT results at the probable-cause hearing, on the basis that he was not given the opportunity to decline the test (see *id.* § 501.5(a)). The trial court granted the motion. Defendant then moved to allow him to introduce the PBT result at trial but to bar the State from doing so. See *id.* § 501.5; *People v. Rose*, 268 Ill. App. 3d 174, 181 (1994) (defendant may introduce PBT result at trial but State may not). He noted that only the first two digits to the right of the decimal point were admissible. See 20 Ill. Adm. Code 1286.210. The State then moved to bar defendant from "introducing any evidence and making any arguments regarding retrograde extrapolation of Defendant's blood/alcohol concentration from the time of defendant's submission to an evidentiary breath test post-arrest to the time of defendant's operation of a motor vehicle, absent expert testimony." The State argued that, under *People v. Barham*, 337 Ill. App. 3d 1121, 1133-34 (2003), only an expert could testify that, based on the PBT, defendant's BAC had been at a certain level while he was driving.

¶ 5     The court heard the motions. The State noted that the PBT had produced a BAC reading of 0.084, although defendant had noted that only the "0.08" would be admissible at trial. The final breath-alcohol test result was 0.09. The court observed that *Barham* states that how and at what rate alcohol is absorbed into and eliminated from the body is a scientific matter requiring

expert knowledge.   Also, as defendant's PBT result was sufficient for a conviction of DBAC, the court stated, "I think I can rule on both foundational grounds, as well as relevance grounds that [defendant] should be barred from making that argument."

¶ 6    Defendant requested clarification.   The court stated that defendant would be barred from arguing to the jury that his PBT result meant that his BAC was lower or higher at a certain point. Defendant asked whether he could introduce the PBT result.   He did not plan to provide "an estimate of what his BAC was at the time of driving."   The court responded that he could introduce the PBT result but not argue "anything involving alcohol absorption, retrograde extrapolation, anything as to, well, here's my .08; therefore, you can assume [it] was less at a different time." The court reiterated that its ruling was based on both foundational and relevance grounds.   The court then granted defendant's motion to allow him but not the State to introduce the PBT result.

¶ 7    At trial, Illinois State police officer Andre Williamson testified on direct examination as follows.   On June 19, 2017, at about 3 a.m., he was stationary in a marked squad car, patrolling Interstate Route 88.   He saw a tan Buick drive west and followed it, activating his radar.   The Buick was going 73 m.p.h. but the posted speed limit was 60 m.p.h.   Twice, it went partway onto the left shoulder.   After Williamson activated his overhead lights, the Buick crossed into the far right lane and drove partially on the right shoulder for about a quarter mile, its left turn signal deployed, before pulling entirely onto the right shoulder and coming to a stop.

¶ 8    Williamson testified that he exited his squad car and spoke with the driver, defendant. Defendant was alone.   He had a strong odor of an alcoholic beverage on his breath.   Williamson asked him whether he had been drinking that morning; defendant said no.   Defendant agreed to perform several tests.   During the horizontal gaze nystagmus (HGN) test, he displayed all six clues, two more than Williamson needed to conclude that he had consumed alcohol.   In the walk-

and-turn test, defendant was told to take nine steps forward in a straight line, turn, and nine steps back. He took 8 steps forward and 11 back, and, at one point, stepped off the line. These two clues, out of a possible eight, were the minimum necessary for Williamson to make a decision. Finally, on the one-legged-stand test, defendant said that he had a bad right knee and a bad right ankle, but he agreed to take the test. Out of four clues, he exhibited two, the minimum needed for Williamson to make a decision. He put his foot down, and he raised his arms. Williamson concluded that defendant was impaired by alcohol and unfit to drive. He based this opinion on defendant's driving, his performance on the field sobriety tests, and the strong alcoholic odor on his breath.

¶ 9     The jury watched a video recorded on Williamson's dashboard camera as he pursued defendant's car. The video was essentially consistent with Williamson's testimony and showed defendant swerving and driving partially on the left shoulder, then crossing over and driving partially on the right shoulder. It also recorded the stop and the field sobriety tests.

¶ 10     Williamson testified that at the police station, at 3:56 a.m., defendant voluntarily provided a breath sample. The result was a BAC of 0.09. At 4:00 a.m., defendant agreed to answer some questions. Asked what time it was, he said he did not know. Asked whether he had taken any medicine, defendant said he had taken some pain medicine. Asked whether he had been drinking, defendant said that he had, at his friend's house. He could not remember when he started but did remember that he stopped about two hours earlier.

¶ 11     Williamson testified on cross-examination that, 30 seconds after he activated his overhead lights, defendant pulled over. When Williamson approached, defendant rolled down his window and produced his license and proof of insurance promptly without fumbling. He exited the car without stumbling or leaning on the car for support. His eyes were not bloodshot or glassy. His

speech was not slurred, mumbled, confused, or thick-tongued. His clothing was not disheveled. He cooperated fully at all times.

¶ 12 Williamson testified that, during the HGN test, defendant did not move his head or sway at all. The odor of an alcoholic beverage is caused by flavorings, not alcohol, which is odorless. Thus, an odor's strength might depend on the flavoring in the beverage. During the one-legged-stand test, defendant put his foot down only once. Before the test, Williamson did not tell him not to raise his arms, but, in demonstrating the test, he kept his arms down. During the walk-and-turn test, after Williamson told defendant not to raise his arms, defendant did not raise his arms.

¶ 13 Defendant made an offer of proof. Williamson would testify that roughly 10 minutes after the stop, defendant took the PBT with a result of 0.08. The court reminded defendant that it had not ruled that he could not introduce the PBT result into evidence, but only that he could not "mak[e] an extrapolation argument."

¶ 14 Both parties rested. In its closing argument, the State noted that the final breath test registered 0.09, making defendant guilty of DBAC. On the DUI charge, the State argued first that, although driving 73 m.p.h. in a 60-m.p.h. zone was not unusual, doing so while passing a fully marked squad car on the side of the road was. Moreover, the video showed multiple lane crossings and a delay of 30 seconds between the activation of the squad car's lights and sirens and defendant's pulling over. Defendant had a strong telltale breath odor yet denied any recent drinking. He failed two field sobriety tests and later admitted that he had been drinking.

¶ 15 Defendant argued that a conviction of DBAC required the State to prove beyond a reasonable doubt that defendant's BAC had been 0.08 or more when he was actually driving and that the breath test taken almost an hour later could not do so. Further, defendant showed just enough clues to fail each of the last two tests. Williamson had unfairly failed him on the one-

legged-stand test: he never told him not to raise his arms, yet he counted this action against him. Finally, defendant had no trouble producing his license and proof of insurance or exiting the car, and his speech, clothing, eyes, and conduct did not suggest that he had been "drunk."

¶ 16    In rebuttal, the State contended that DUI did not require proof that defendant had been "drunk" but only that consuming alcohol had impaired his driving. The State reiterated that defendant's very erratic driving, his admission to drinking (corroborated by the odor of alcohol and the HGN result), and his failure of the two impairment tests were ample proof of impairment.

¶ 17    The jury found defendant guilty of both counts. In his posttrial motion, he contended that the court had erred in refusing his request to argue to the jury that the progression from a 0.08 BAC 10 minutes after the stop to a 0.09 BAC, 56 minutes after the stop allowed an inference that his BAC might have been under 0.08 shortly before the stop. The court disagreed, stating that no linear progression could be assumed and that, without expert testimony on alcohol absorption, there were "just too many factors biologically" to allow defendant to make his argument. Further, the court opined, the evidence of DUI was not close. The court denied the motion and imposed one year of court supervision or DUI. Defendant timely appealed.

¶ 18                              II. ANALYSIS

¶ 19    Defendant raises one contention of error: the trial court denied him his right to present a defense by barring him from arguing that the PBT result was probative of whether his BAC while driving was under 0.08. Defendant notes that both charges required the State to prove defendant's condition when he was driving, not later. He notes further that the State was permitted to argue that the result of the breath test taken 56 minutes after the stop was probative of his BAC while he drove. Defendant reasons that logic required the trial court to permit him to argue that the PBT

result, in conjunction with the result of the second test, created a reasonable doubt of whether his BAC was less than 0.08 when he drove.

¶ 20    Defendant contends further that the PBT result was relevant not only to the DBAC charge but also to the DUI charge, because a finding that his BAC was at least 0.08 when he drove triggered a presumption that his driving had been impaired by the consumption of alcohol.   See 625 ILCS 5/11-501.2(b)(3) (West 2016).   Defendant also contends that the trial court's error was not harmless, because the evidence was closely balanced.

¶ 21    We must clarify an important point.   Only the finding of defendant's guilt of DUI is at issue on this appeal.   The jury made a finding of guilty of DBAC, but the trial court merged that finding into the finding of guilty of DUI and entered the judgment of supervision on the DUI finding only.   That finding was immediately appealable, of course.   See Illinois Supreme Court R. 604(b) (eff. July 1, 2017).   However, the merger of the two findings meant that there was no judgment of guilty of DBAC.

¶ 22    In *People v. Sandefur*, 378 Ill. App. 3d 133 (2007), the trial court merged the defendant's conviction of aggravated criminal sexual abuse into his conviction of predatory criminal sexual assault and sentenced him only on the latter.   On appeal, the defendant argued that the jury should have been instructed on battery as a lesser included offense of aggravated criminal sexual abuse. The appellate court held that the issue was not before it.   The trial court had never entered a judgment of conviction on, or a sentence for, aggravated criminal sexual abuse. Therefore, there was no final judgment on that charge and, as a result, an appeal could not be entertained.   *Id.* at 142-43.   *Sandefur* is not precisely on point here, as the order of supervision necessarily entailed no conviction or sentence.   See 730 ILCS 5/5-1-21 (West 2018); *People v. Bushnell*, 101 Ill. 2d 261, 265-66 (1984).   Nonetheless, it applied by analogy: by merging the DBAC finding into the

DUI finding, the trial court eliminated the former, barring any appeal from it. Therefore, our review is limited to the finding of guilty of DUI.

¶ 23 We need not consider whether the trial court's ruling that defendant challenges was erroneous. Instead, we decide the appeal on the ground of harmless error. We note that the ruling at issue might have been crucial to the charge of DBAC, because the proof of that charge turned primarily on the second BAC test and its interpretation. However, as noted, the DBAC charge is not on appeal here; only the DUI charge is. The DUI charge could have been, and was, supported by much evidence other than BAC results. Thus, any error was harmless because the evidence of DUI was not closely balanced. See *In re E.H.*, 377 Ill. App. 3d 406, 415 (2007) (an evidentiary error is harmless when there is no reasonable probability that the jury would have acquitted the defendant absent the error).

¶ 24 Williamson's testimony, corroborated by the video, proved that, before the stop, defendant drove well over the speed limit even though he was passing a marked police car; twice swerved partway onto the left shoulder; then, after Williamson activated his lights, drove another quarter mile, crossing over until he was partway onto the right shoulder, in all going another quarter mile before stopping. After he was stopped, defendant denied that he had been drinking, but the HGN test proved otherwise and defendant later conceded that he had been drinking. The strong odor on his breath corroborated that admission. Defendant failed both field sobriety tests. Defendant stresses the evidence that supported his argument at trial that he had not been "drunk," but the State correctly countered that a conviction of DUI required proof only that defendant was under the influence of alcohol to such a degree that his ability to operate his vehicle was impaired. *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 36. That proof was ample.

¶ 25    Defendant's argument about the BAC tests could have had little effect on the DUI charge. The jury might have been persuaded to apply the purely permissive presumption of DUI based on a BAC of 0.08 or more (the jury was instructed on the presumption per Illinois Pattern Jury Instructions, Criminal, No. 23.30 (approved Dec. 8, 2011)).   But raising the possibility that defendant's BAC was marginally less than 0.08 when he was driving—which was all that his argument could have accomplished—would not have undone the strong evidence that, whatever the precise level of alcohol in his system, it impaired his driving.   We note that we considered Defendant's argument that he was revising a rebuttal to circumstantial evidence of his BAC reading presented by the State, but here it does not matter because the appeal is of the DUI charge. Therefore, any error was harmless.

¶ 26                                   III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 28    Affirmed.